RUSS, AUGUST & KABAT
Brian D. Ledahl (CA SBN 186579)
bledahl@raklaw.com
Neil A. Rubin (CA SBN 250761)
nrubin@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiffs
*IPValue Management, Inc. and*
*Longitude Flash Memory Solutions Ltd.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IPVALUE MANAGEMENT, INC., and LONGITUDE FLASH MEMORY SOLUTIONS LTD.,<br><br>        Plaintiffs,<br><br>vs.<br><br>WESTERN DIGITAL CORPORATION, and SANDISK CORPORATION,<br><br>        Defendants. | Case No. 8:25-cv-00119-MWF(DFMx)<br><br>**AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiffs IPValue Management, Inc. ("IPValue") and Longitude Flash Memory Solutions Ltd. ("LFMS," and collectively with IPValue "Plaintiffs") make the following allegations against Defendants Western Digital Corporation ("Western Digital") and Sandisk Corporation ("Sandisk," and collectively with "Western Digital" the "Defendants"):

## INTRODUCTION

1.      This complaint arises from Defendants' unlawful infringement of the following United States patents exclusively licensed as to the claims in this lawsuit by IPValue: U.S. Patent No. 8,633,537 ("'537 Patent"); U.S. Patent No. 9,929,240 ("'240 Patent"); U.S. Patent No. 11,456,365 ("'365 Patent"); U.S. Patent No. 6,963,505 ("'505 Patent"); and U.S. Patent No. 7,671,664 ("'664 Patent") (collectively the "Asserted Patents").

2.      LFMS is an intellectual property and technology licensing company. LFMS's patent portfolio comprises over 472 active and pending patents worldwide, including approximately 301 active United States patents. LFMS acquired these patents and/or rights to assert them from Cypress Semiconductor, a well-known American semiconductor design and manufacturing company that was acquired by Infineon Technologies in 2020 for nearly $10 billion.[1] In some instances, Cypress acquired patent assets from other entities such as Spansion Israel Ltd. through acquisitions. The innovations in these patents have greatly enhanced the capabilities of computer systems, increased electronic device processing power and capabilities and improved the functioning of computer memory and storage devices.

3.      IPValue is a leader in intellectual property and technology licensing whose mission is to fuel innovation by working with leading technology enterprises

---

[1] *See* "Infineon snaps up San Jose's Cypress Semiconductor in $10B deal", *available at* https://www.bizjournals.com/sanjose/news/2019/06/03/infineon-snaps-up-san-jose-s-cypress-semiconductor.html.

to generate revenues from their IP portfolios. LFMS has provided IPValue with an exclusive license to the Asserted Patents and the right to assert these patents against Defendants.

4.    Defendants have infringed and continue to infringe Plaintiffs' patents. Moreover, despite Plaintiffs notifying Western Digital of infringement—and despite Sandisk (1) being a successor-in-part to Western Digital, (2) being personally aware of such notification, and (3) being aware of Plaintiffs' lawsuit against Western Digital—Defendants have thus far refused to license those patents. Instead, they have continued to make, use, sell, offer to sell, and/or import Plaintiffs' intellectual property within the United States without Plaintiffs' permission. IPValue attempted to engage in licensing discussions with Western Digital for some time before initiating this action.  For example, a letter from IPValue to Western Digital dated March 26, 2021, informed Western Digital that its products containing 3D NAND Flash memory infringed numerous patents, including the '537 Patent, the '240 Patent, '505 Patent, and the '664 Patent. A further letter from IPValue to Western Digital dated February 10, 2023, informed Western Digital that its products containing 3D NAND Flash memory infringed additional patents, including the '365 Patent. IPValue had multiple meetings with Western Digital in 2022, 2023, and 2024 where it presented detailed evidence demonstrating that Western Digital's products infringed each of the Asserted Patents.  Nonetheless, Western Digital refused to take a license to these valuable patents. Unable to move forward with licensing discussions, IPValue had no other choice but to file this lawsuit.

## **PARTIES**

5.    IPValue is a Delaware corporation, having its principal place of business at 2880 Lakeside Dr., Ste. 320, Santa Clara, CA 95054.

6.    LFMS is a privately held company, having its principal place of business at Plaza 255 Suite 2A, Blanchardstown Corporate Park 2, Blanchardstown, Dublin 15, D15 YH6H.

7.      Western Digital is a Delaware corporation with a principal place of business at 5601 Great Oaks Parkway, San Jose, California, 95119. Western Digital, on information and belief, has designed and manufactured, among other things, solid state drives ("SSD"), hard drives ("HDD"), USB Flash Drives, Embedded Flash, Memory Cards, and other non-volatile memory-based storage, and it continues to design and manufacture at least HDDs, including OptiNAND HDDs. Western Digital may be served with process through its registered agent, the Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

8.      Sandisk is a Delaware corporation with a principal place of business at 951 Sandisk Drive, Milpitas, California, 95035. On information and belief, Sandisk was incorporated on February 5, 2024, and until February 21, 2025 was a wholly-owned subsidiary of Western Digital. Sandisk, on information and belief, designs and manufactures, among other things, solid state drives ("SSD"), USB Flash Drives, Embedded Flash, Memory Cards, and other non-volatile memory-based storage. Sandisk may be served with process through its registered agent, the Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

**JURISDICTION AND VENUE**

9.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has personal jurisdiction over Defendants in this action because Defendants have committed acts within this District giving rise to this action and have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Defendants, directly and through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by,

among other things, importing, offering to sell, and selling products that infringe the asserted patents.

11.    Venue is proper in this District under 28 U.S.C. § 1400(b). Upon information and belief, Defendants have transacted business in this District and have committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and importing products that infringe the asserted patents. Defendants each have at least one regular and established place of business in the District. For example, Defendants each have offices at 3355 Michelson Dr., Irvine, CA, 92612.

## DEFENDANTS' PRE-SUIT KNOWLEDGE OF
## ITS INFRINGEMENT OF PLAINTIFFS' PATENTS

12.    Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

13.    Before filing this action, LFMS, through its agent IPValue, notified Defendant Western Digital about the Asserted Patents and its infringement thereof. Among other things, IPValue identified the Asserted Patents to Western Digital in multiple communications from 2021–2024; alleged that Western Digital infringed the Asserted Patents, including identifying exemplary infringing products; sought to engage Western Digital in discussions regarding its use of Plaintiffs' intellectual property (including the Asserted Patents); and offered to license the Asserted Patents to Western Digital.

14.    For example, on March 26, 2021, IPValue sent a letter to Western Digital, notifying Western Digital of its infringement of certain of Plaintiffs' patents, including the '537 Patent, the '240 Patent, '505 Patent, and the '664 Patent. On February 10, 2023, IPValue sent a further letter to Western Digital, notifying Western Digital of its infringement of additional patents of Plaintiffs, including the '365 Patent. In each letter, IPValue specifically identified Western Digital's products using 3D NAND Flash memory as exemplary infringing products.

15.    IPValue also conducted multiple in-person and video meetings with Western Digital about licensing Plaintiffs' patents, including on May 24, 2022, August 24–25, 2022, November 17, 2022, February 8, 2023, June 21, 2023, September 26–27, 2023, and November 1, 2023. During the August 24–25, 2022, meetings, IPValue provided Western Digital with detailed evidence that its products infringe the '537 Patent, the '240 Patent, the '505 Patent, and the '664 Patent. During the November 1, 2023 meeting, IPValue provided Western Digital with detailed evidence that its products infringe the '365 Patent.

16.    As a successor-in-part to Western Digital, Sandisk has had knowledge of its infringement of the Asserted Patents for as long as Western Digital has had knowledge of infringement. At a minimum, Sandisk has had such knowledge since its existence as a separate entity due to the prior notice to Western Digital before Sandisk was spun out as a separate entity. On March 7, 2025, Sandisk filed a complaint for declaratory judgment of noninfringement as to each of the Asserted Patents, confirming that Sandisk was aware of Plaintiffs' allegations that its products infringed the Asserted Patents.

17.    Despite Plaintiffs' repeated efforts, which have continued for nearly four years, Defendants have refused to license the Asserted Patents and have also not taken steps to end their infringement of the Asserted Patents. Instead, Defendants continue to knowingly, intentionally, and willfully infringe Plaintiffs' patents directly, contributorily, and by inducement, to obtain their significant benefits without a license from Plaintiffs.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,633,537

18.    Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

19.    LFMS is the owner and assignee of United States Patent No. 8,633,537 titled "Memory transistor with multiple charge storing layers and a high work

Russ, August & Kabat

function gate electrode." IPValue has the exclusive right to license the '537 Patent to Defendants and possesses substantial rights including the right to enforce the patent against Defendants. The '537 Patent was duly and legally issued by the United States Patent and Trademark Office on January 21, 2014. A true and correct copy of the '537 Patent is attached as Exhibit 1.

20.    Defendant Western Digital has known of the '537 Patent and its infringement of that patent since at least as early as March 26, 2021. On information and belief, Defendant Sandisk—as successor-in-part to Western Digital and by and through its officers and employees—has known of the '537 Patent and that Sandisk's products infringe that patent since at least as early as March 26, 2021.

21.    Defendants, knowing their products infringe the '537 Patent and with the specific intent for others to infringe the '537 Patent, have directly infringed (literally and equivalently) and induced and contributed to infringement by others of the '537 Patent by making, using, offering for sale, selling, and/or importing into the United States certain products and services that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '537 Patent, and continue to do so. By way of illustrative example, these infringing products and services include, without limitation, Defendants' SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, and all versions and variations thereof since the issuance of the '537 Patent ("Accused Products").

22.    Defendants have also infringed, and continue to infringe, claims of the '537 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendants know the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial

6

noninfringing use. Accordingly, Defendants have been, and currently are, contributorily infringing the '537 Patent, in violation of 35 U.S.C. § 271(c).

23.    Plaintiffs have complied with 35 U.S.C. § 287. At a minimum, Plaintiffs provided Defendants with pre-suit notice of infringement of the '537 Patent no later than March 26, 2021.

24.    Plaintiffs have sustained and are entitled to recover damages as a result of Defendants' infringement.

25.    As described above, Defendants' infringement of the '537 Patent has been knowing, deliberate, and willful, since at least as early as March 26, 2021, the date of IPValue's first letter to Western Digital and therefore the latest possible date on which Western Digital knew of the '537 Patent and that its conduct constituted and resulted in infringement of the '537 Patent. IPValue again identified the '537 Patent and Defendants' infringement thereof several times thereafter, as described above, and also including through this Complaint. Defendants nonetheless have committed acts of direct and indirect infringement despite knowing that their actions constituted infringement of the valid and enforceable '537 Patent, despite a risk of infringement that was known or so obvious that it should have been known to Defendants, and/or even though Defendants otherwise knew or should have known that their actions constituted an unjustifiably high risk of infringement of that valid and enforceable patent. Defendants' conduct in light of these circumstances is egregious. Defendants' knowing, deliberate, and willful infringement of the '537 Patent entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

26.    The Accused Products satisfy all claim limitations of one or more claims of the '537 Patent. For example, the Accused Products infringe claim 17 of the '537 Patent. One, non-limiting, example of the Accused Products infringement is presented below.

27.    The Accused Products include "a semiconductor device" comprising "a memory transistor." For example,



28.    In the Accused Products, the memory transistor includes "a vertical channel comprising polysilicon extending from a first diffusion region formed on a surface on a substrate to a second diffusion region formed over the surface of the substrate, the vertical channel electrically connecting the first diffusion region to the second diffusion region." For example,



8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT



29.    In the Accused Products, the memory transistor includes "an oxide-nitride-nitride-oxide (ONNO) stack disposed about the vertical channel." For example,



30.    In the Accused Products, the ONNO stack includes "a tunnel dielectric layer abutting the vertical channel." For example,

9



31.    In the Accused Products, the ONNO stack includes "a multi-layer charge-trapping region including a first nitride layer comprising an oxygen-rich nitride abutting the tunnel dielectric layer, and a second nitride layer comprising a silicon-rich, oxygen-lean nitride overlying the first nitride layer." For example,

10



32.    In the Accused Products, the ONNO stack includes "a blocking dielectric layer overlying the multi-layer charge-trapping region." For example,



33.    In the Accused Products, the memory transistor includes "a high work

RUSS, AUGUST & KABAT

function gate electrode disposed about the ONONO stack, abutting the blocking dielectric layer." For example,



## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 9,929,240

34.    Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

35.    LFMS is the owner and assignee of United States Patent No. 9,929,240 titled "Memory transistor with multiple charge storing layers and a high work function gate electrode." IPValue has the exclusive right to license the '240 Patent to Defendants and possesses substantial rights including the right to enforce the patent against Defendants. The '240 Patent was duly and legally issued by the United States Patent and Trademark Office on March 27, 2018. A true and correct copy of the '240 Patent is attached as Exhibit 2.

36.    Defendant Western Digital has known of the '240 Patent and its infringement of that patent since at least as early as March 26, 2021. On information and belief, Defendant Sandisk—as successor-in-part to Western Digital and by and through its officers and employees—has known of the '240 Patent and that Sandisk's products infringe that patent since at least as early as March 26, 2021.

37.    Defendants, knowing their products infringe the '240 Patent and with the specific intent for others to infringe the '240 Patent, have directly infringed

(literally and equivalently) and induced and contributed to infringement by others of the '240 Patent by making, using, offering for sale, selling, and/or importing into the United States certain products and services that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '240 Patent, and continue to do so. By way of illustrative example, these infringing products and services include, without limitation, Defendants' SSDs, OptiNAND HDDs, USB Flash Drives,  Embedded Flash, and Memory Cards containing 3D NAND flash memory, and all versions and variations thereof since the issuance of the '240 Patent ("Accused Products").

38.    Defendants have also infringed, and continue to infringe, claims of the '240 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendants know the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendants have been, and currently are, contributorily infringing the '240 Patent, in violation of 35 U.S.C. § 271(c).

39.    Plaintiffs have complied with 35 U.S.C. § 287. At a minimum, Plaintiffs provided Defendants with pre-suit notice of infringement of the '240 Patent no later than March 26, 2021.

40.    Plaintiffs have sustained and are entitled to recover damages as a result of Defendants' infringement.

41.    As described above, Defendants' infringement of the '240 Patent has been knowing, deliberate, and willful, since at least as early as March 26, 2021, the date of IPValue's first letter to Western Digital and therefore the latest possible date on which Western Digital knew of the '240 Patent and that its conduct constituted and resulted in infringement of the '240 Patent. IPValue again identified the '240

RUSS, AUGUST & KABAT

13

Patent and Defendants' infringement thereof several times thereafter, as described above, and also including through this Complaint. Defendants nonetheless have committed acts of direct and indirect infringement despite knowing that their actions constituted infringement of the valid and enforceable '240 Patent, despite a risk of infringement that was known or so obvious that it should have been known to Defendants, and/or even though Defendants otherwise knew or should have known that their actions constituted an unjustifiably high risk of infringement of that valid and enforceable patent. Defendants' conduct in light of these circumstances is egregious. Defendants' knowing, deliberate, and willful infringement of the '240 Patent entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

42.     The Accused Products satisfy all claim limitations of one or more claims of the '240 Patent. For example, the Accused Products infringe claim 12 of the '240 Patent. One, non-limiting, example of the Accused Products infringement is presented below.

43.     The Accused Products include "a semiconductor device" comprising "a memory device." For example,



44.     In the Accused Products, the memory device includes "a gate structure including a first high work function gate electrode." For example,



45.    In the Accused Products, the memory device includes "a channel positioned between and electrically connecting a first diffusion region and a second diffusion region, wherein the channel is vertical and oriented substantially perpendicular to a semiconductor material structure." For example,







46.    In the Accused Products, the memory device includes "a tunnel dielectric layer, a multi-layer charge trapping layer, and a blocking dielectric layer disposed between the gate structure and the channel, wherein the multi-layer charge trapping layer comprises a first dielectric layer disposed abutting a second dielectric layer, wherein the first dielectric layer includes oxygen-rich nitride and the second dielectric layer includes oxygen-lean nitride." For example,



47.    In the Accused Products, the memory device includes "a metal oxide semiconductor (MOS) logic device including a gate oxide layer and a second high work function gate electrode disposed thereon." For example,



## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 11,456,365

48.    Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

49.    LFMS is the owner and assignee of United States Patent No. 11,456,365 titled "Memory transistor with multiple charge storing layers and a high work function gate electrode." IPValue has the exclusive right to license the '365 Patent to Defendants and possesses substantial rights including the right to enforce the patent against Defendants. The '365 Patent was duly and legally issued by the United States Patent and Trademark Office on September 27, 2022. A true and correct copy of the '365 Patent is attached as Exhibit 3.

50.    Defendant Western Digital has known of the '365 Patent and its infringement of that patent since at least as early as February 10, 2023. On information and belief, Defendant Sandisk—as successor-in-part to Western Digital and by and through its officers and employees—has known of the '365 Patent and that Sandisk's products infringe that patent since at least as early as February 10, 2023.

51.    Defendants, knowing their products infringe the '365 Patent and with the specific intent for others to infringe the '365 Patent, have directly infringed (literally and equivalently) and induced and contributed to infringement by others of

17

the '365 Patent by making, using, offering for sale, selling, and/or importing into the United States certain products and services that directly infringe and/or were made by a patented process, literally and/or under the doctrine of equivalents, one or more claims of the '365 Patent, and continue to do so. By way of illustrative example, these infringing products and services include, without limitation, Defendants' SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, and all versions and variations thereof since the issuance of the '365 Patent ("Accused Products").

52.     Defendants have also infringed, and continue to infringe, claims of the '365 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendants know the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendants have been, and currently are, contributorily infringing the '365 Patent, in violation of 35 U.S.C. § 271(c).

53.     Plaintiffs have complied with 35 U.S.C. § 287. At a minimum, Plaintiffs provided Defendants with pre-suit notice of infringement of the '365 Patent no later than February 10, 2023.

54.     Plaintiffs have sustained and are entitled to recover damages as a result of Defendants' infringement.

55.     As described above, Defendants' infringement of the '365 Patent has been knowing, deliberate, and willful, since at least as early as February 10, 2023, the date of IPValue's first letter to Western Digital and therefore the latest possible date on which Western Digital knew of the '365 Patent and that its conduct constituted and resulted in infringement of the '365 Patent. IPValue again identified the '365 Patent and Defendants' infringement thereof several times thereafter, as

18

described above, and also including through this Complaint. Defendants nonetheless have committed acts of direct and indirect infringement despite knowing that their actions constituted infringement of the valid and enforceable '365 Patent, despite a risk of infringement that was known or so obvious that it should have been known to Defendants, and/or even though Defendants otherwise knew or should have known that their actions constituted an unjustifiably high risk of infringement of that valid and enforceable patent. Defendants' conduct in light of these circumstances is egregious. Defendants' knowing, deliberate, and willful infringement of the '365 Patent entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

56.    The Accused Products satisfy all claim limitations of one or more claims of the '365 Patent. For example, the Accused Products infringe claim 35 of the '365 Patent. One, non-limiting, example of the Accused Products infringement is presented below.

57.    The Accused Products include a "semiconductor memory device" that includes "a semiconductor substrate." For example,



58.    In the Accused Products, the semiconductor memory device includes "a channel region oriented substantially perpendicular to the semiconductor substrate, the channel region formed in a substantially annular shape." For example,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT



59.    In the Accused Products, the semiconductor memory device includes "a tunnel dielectric layer surrounding the channel region, the tunnel dielectric layer formed in a substantially annular shape." For example,



60.    In the Accused Products, the semiconductor memory device includes "a multi-layer charge storing region surrounding the tunnel dielectric layer, the multi-layer charge storing region formed in a substantially annular shape." For example,



61.    In the Accused Products, the semiconductor memory device includes "a blocking dielectric layer surrounding the multi-layer charge storing region, the blocking dielectric layer formed in a substantially annular shape." For example,



62.    In the Accused Products, the semiconductor memory device includes "a gate electrode surrounding the blocking dielectric layer." For example,



## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 6,963,505

63.    Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

64.    IPValue has the exclusive right to license United States Patent No. 6,963,505 titled "Method circuit and system for determining a reference voltage" to

Defendants and possesses substantial rights including the right to enforce the patent against Defendants. The '505 Patent was duly and legally issued by the United States Patent and Trademark Office on November 8, 2005. A true and correct copy of the '505 Patent is attached as Exhibit 4.

65.    Defendant Western Digital has known of the '505 Patent and its infringement of that patent since at least as early as March 26, 2021. On information and belief, Defendant Sandisk—as successor-in-part to Western Digital and by and through its officers and employees—has known of the '505 Patent and that Sandisk's products infringe that patent since at least as early as March 26, 2021..

66.    Defendants, knowing their products infringe the '505 Patent and with the specific intent for others to infringe the '505 Patent, have directly infringed (literally and equivalently) and induced and contributed to infringement by others of the '505 Patent by making, using, offering for sale, selling, and/or importing into the United States certain products and services that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '505 Patent, and continue to do so. By way of illustrative example, these infringing products and services include, without limitation, Defendants' SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, and all versions and variations thereof since the issuance of the '537 Patent ("Accused Products").

67.    Defendants have also infringed, and continue to infringe, claims of the '505 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendants know the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendants have been, and currently are,

23

contributorily infringing the '505 Patent, in violation of 35 U.S.C. § 271(c).

68.    Plaintiffs have complied with 35 U.S.C. § 287. At a minimum, Plaintiffs provided Defendants with pre-suit notice of infringement of the '505 Patent no later than March 26, 2021.

69.    Plaintiffs have sustained and are entitled to recover damages as a result of Defendants' infringement.

70.    As described above, Defendants' infringement of the '505 Patent has been knowing, deliberate, and willful, since at least as early as March 26, 2021, the date of IPValue's first letter to Western Digital and therefore the latest possible date on which Western Digital knew of the '505 Patent and that its conduct constituted and resulted in infringement of the '505 Patent. IPValue again identified the '505 Patent and Defendants' infringement thereof several times thereafter, as described above, and also including through this Complaint. Defendants nonetheless have committed acts of direct and indirect infringement despite knowing that their actions constituted infringement of the valid and enforceable '505 Patent, despite a risk of infringement that was known or so obvious that it should have been known to Defendants, and/or even though Defendants otherwise knew or should have known that their actions constituted an unjustifiably high risk of infringement of that valid and enforceable patent. Defendants' conduct in light of these circumstances is egregious. Defendants' knowing, deliberate, and willful infringement of the '505 Patent entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

71.    The Accused Products satisfy all claim limitations of one or more claims of the '505 Patent. For example, the Accused Products infringe claim 1 of the '505 Patent. One, non-limiting, example of the Accused Products infringement is presented below.

72.    In or about 2000, Toshiba Corporation and the then-Sandisk Corporation formed a joint venture (the "Toshiba/SanDisk Joint Venture") to

RUSS, AUGUST & KABAT

develop and manufacture flash-memory chips. The Sandisk Corporation entity that formed the joint venture was acquired by Western Digital in 2016 and is a distinct legal entity from the Sandisk Corporation that is a defendant to this action. On information and belief, some or all of the Accused Products contain flash memory and/or controller chips manufactured by the Toshiba/SanDisk Joint Venture.

73.    At the International Solid-State Circuits Conference (ISSCC) 2018, authors affiliated with the Toshiba/SanDisk Joint Venture presented a paper titled "A 512Gb 3b/Cell 3D flash memory on a 96-word-line-layer technology" (the "ISSCC 2018 96L Paper"):

**ISSCC 2018 / SESSION 20 / FLASH-MEMORY SOLUTI**

**20.1    A 512Gb 3b/Cell 3D Flash Memory on a 96-Word-Line-Layer Technology**

Hiroshi Maejima[1], Kazushige Kanda[1], Susumu Fujimura[1], Teruo Takagiwa[1], Susumu Ozawa[1], Jumpei Sato[1], Yoshihiko Shindo[1], Manabu Sato[1], Naoaki Kanagawa[1], Junji Musha[1], Satoshi Inoue[1], Katsuaki Sakurai[1], Naohito Morozumi[1], Ryo Fukuda[1], Yuui Shimizu[1], Toshifumi Hashimoto[1], Xu Li[1], Yuuki Shimizu[1], Kenichi Abe[1], Tadashi Yasufuku[1], Takatoshi Minamoto[1], Hiroshi Yoshihara[1], Takahiro Yamashita[1], Kazuhiko Satou[2], Takahiro Sugimoto[1], Fumihiro Kono[1], Mitsuhiro Abe[1], Tomoharu Hashiguchi[1], Masatsugu Kojima[1], Yasuhiro Suematsu[2], Takahiro Shimizu[1], Akihiro Imamoto[1], Naoki Kobayashi[1], Makoto Miakashi[1], Kouichirou Yamaguchi[1], Sanad Bushnaq[1], Hicham Haibi[1], Masatsugu Ogawa[1], Yusuke Ochi[1], Kenro Kubota[2], Taichi Wakui[2], Dong He[1], Weihan Wang[1], Hiroe Minagawa[1], Tomoko Nishiuchi[1], Hao Nguyen[3], Kwang-Ho Kim[3], Ken Cheah[3], Yee Koh[3], Feng Lu[3], Venky Ramachandra[3], Srinivas Rajendra[3], Steve Choi[3], Keyur Payak[3], Namas Raghunathan[3], Spiros Georgakis[3], Hiroshi Sugawara[3], Seungpil Lee[3], Takuya Futatsuyama[1], Koji Hosono[1], Noboru Shibata[1], Toshiki Hisada[1], Tetsuya Kaneko[1], Hiroshi Nakamura[1]

[1]Toshiba Memory, Yokohama, Japan
[2]Toshiba Memory Systems, Yokohama, Japan; [3]SanDisk, Milpitas, CA

RUSS, AUGUST & KABAT

The first multi-layer stacked 3D Flash memory was proposed as BiCS FLASH in 2007 [1]. Since then, memory bit density has grown rapidly due to the increase in the number of stacked layers from continuous 3D technology innovations. On the other hand, the multi-level-cell technology, which was initially proposed for 2D Flash, has also been adopted to 3D Flash memories. The first 3b/cell 32-layer Flash was presented in 2015 [2], followed by a 48-layer one in 2016 [3], and a 64-layer one in 2017 [4,5]. This paper describes a 512Gb 3b/cell 3D Flash memory in a 96-word-line-layer BiCS FLASH technology. This work implements three key technologies to improve performance: (1) a string based start bias control scheme achieves a 7% shorter program time; (2) a smart $V_t$-tracking read improves read retry performance by minimizing the tracking time and supporting a program suspend read function, and; (3) a low-pre-charge sense-amplifier bus scheme reduces both the power consumption and the data-transfer time between the sense amplifier (SA) and the data cache by half. Figure 20.1.1 shows the die micrograph and the summary of the key features of the chip.

Source: SanDisk/WD-Toshiba, Paper 20.1, ISSCC 2018, "A 512Gb 3b/Cell Flash Memory on a 96-Word-Line-Layer Technology."

74.    Certain of the Accused Products utilize 96L or 112L 3D NAND Flash memory. On information and belief, these 96L and 112L Accused Products utilize memory developed by the Toshiba/SanDisk Joint Venture and controllers developed by Western Digital in collaboration with the Toshiba/SanDisk Joint Venture:

| WD Blue SN550 SSD Specifications | | | |
| --- | --- | --- | --- |
| Capacity | 250 GB | 500 GB | 1 TB |
| Form Factor | M.2 2280 PCIe 3.0 x4 | | |
| Controller | WD in-house | | |
| DRAM | None | | |
| NAND Flash | Western Digital/SanDisk 96L 3D TLC | | |
| Sequential Read | 2400 MB/s | 2400 MB/s | 2400 MB/s |
| Sequential Write | 950 MB/s | 1750 MB/s | 1950 MB/s |
| Random Read | 170k IOPS | 300k IOPS | 410k IOPS |
| Random Write | 135k IOPS | 240k IOPS | 405k IOPS |
| Warranty | 5 years | | |
| Write Endurance | 150 TB 0.3 DWPD | 300 TB 0.3 DWPD | 600 TB 0.3 DWPD |
| MSRP | $54.99 | $64.99 | $99.99 |

Source: https://www.anandtech.com/show/15214/western-digital-announces-wd-blue-sn550-ssd

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

75.    On information and belief, the ISSCC 2018 96L Paper describes techniques utilized in the operation of the 96L and/or 112L Accused Products. As an example of the basis for this information and belief, during the August 24–25, 2022, meetings between the parties discussed above, IPValue provided Western Digital with evidence that its products infringed the '505 patent, based in part upon the ISSCC 2018 96L Paper. While Western Digital provided responses to IPValue concerning this patent in subsequent meetings, Western Digital never denied that the ISSCC 2018 96L Paper accurately described techniques utilized in its products.

76.    The Accused Products practice a "method of selecting a reference level from a set of possible reference levels," which includes "using each of said possible reference levels to read a set of cells from a memory area." For example,

A key design challenge in recent years is enhancing the retry read performance of a 3D Flash memory. The valley tracking read [5] minimizes the BER by adaptively finding the optimal read voltage. We propose a smart $V_{th}$ tracking read (SVTR) to improve the retry read performance by reducing the number of tracking cycles, and to support a program-suspend read function. Figure 20.1.4 shows the SVTR waveform for a middle-page read. The read operation consists of two parts; (1) a $V_t$ tracking read (VTR), where the selected WL level moves from the MP1-state to the MP2-state, and then to the MP3-state. The optimal read voltage is to be tracked

for each state. The number of stages related to each state is parameterizable and the WL voltage step has enough resolution to guarantee the accuracy of VTR. A bit count operation is executed in parallel with VTR, and the bit whose $V_t$ is distributed between the read voltage of the $N^{th}$ stage read and $(N+1)^{th}$ stage read is counted concurrently with the $(N+2)^{th}$ stage read operation. VTR is used with a shielded-bitline current-sense (SBL) scheme [4], because SBL suppresses BL coupling noise thereby realizing a shorter read time [4]. The number of S/A latches in use is reduced by half in comparison with a conventional all bitline current sense (ABL) scheme. (2) A calibrating read (CALR), in which the optimal read voltage that is determined from the bit count result of the VTR is applied. A CALR is

27



Figure 20.1.4: Smart $V_t$ tracking read (SVTR) and high-state option.

Source: SanDisk/WD-Toshiba, Paper 20.1, ISSCC 2018, A 512Gb 3b/Cell Flash Memory on a 96-Word-Line-Layer Technology

77.    In the Accused Products, the method includes "determining a read error rate for each one of said possible reference levels associated with the reading of said set of cells." For example,

> A key design challenge in recent years is enhancing the retry read performance of a 3D Flash memory. The valley tracking read [5] minimizes the BER by adaptively finding the optimal read voltage. We propose a smart $V_{th}$ tracking read (SVTR) to improve the retry read performance by reducing the number of tracking cycles, and to support a program-suspend read function. Figure 20.1.4 shows the SVTR waveform for a middle-page read. The read operation consists of two parts; (1) a $V_t$ tracking read (VTR), where the selected WL level moves from the MP1-state to the MP2-state, and then to the MP3-state. The optimal read voltage is to be tracked
>
> for each state. The number of stages related to each state is parameterizable and the WL voltage step has enough resolution to guarantee the accuracy of VTR. A bit count operation is executed in parallel with VTR, and the bit whose $V_t$ is distributed between the read voltage of the $N^{th}$ stage read and $(N+1)^{th}$ stage read is counted concurrently with the $(N+2)^{th}$ stage read operation. VTR is used with a shielded-bitline current-sense (SBL) scheme [4], because SBL suppresses BL coupling noise thereby realizing a shorter read time [4]. The number of S/A latches in use is reduced by half in comparison with a conventional all bitline current sense (ABL) scheme. (2) A calibrating read (CALR), in which the optimal read voltage that is determined from the bit count result of the VTR is applied. A CALR is

RUSS, AUGUST & KABAT



Source: SanDisk/WD-Toshiba, Paper 20.1, ISSCC 2018, A 512Gb 3b/Cell Flash Memory on a 96-Word-Line-Layer Technology

78.    In the Accused Products, the method includes "selecting a reference level from said set of possible reference levels whose read error rate is relatively low." For example,

A key design challenge in recent years is enhancing the retry read performance of a 3D Flash memory. The valley tracking read [5] minimizes the BER by adaptively finding the optimal read voltage. We propose a smart $V_{th}$ tracking read (SVTR) to improve the retry read performance by reducing the number of tracking cycles, and to support a program-suspend read function. Figure 20.1.4 shows the SVTR waveform for a middle-page read. The read operation consists of two parts; (1) a $V_t$ tracking read (VTR), where the selected WL level moves from the MP1-state to the MP2-state, and then to the MP3-state. The optimal read voltage is to be tracked for each state. The number of stages related to each state is parameterizable and the WL voltage step has enough resolution to guarantee the accuracy of VTR. A bit count operation is executed in parallel with VTR, and the bit whose $V_t$ is distributed between the read voltage of the $N^{th}$ stage read and $(N+1)^{th}$ stage read is counted concurrently with the $(N+2)^{th}$ stage read operation. VTR is used with a shielded-bitline current-sense (SBL) scheme [4], because SBL suppresses BL coupling noise thereby realizing a shorter read time [4]. The number of S/A latches in use is reduced by half in comparison with a conventional all bitline current sense (ABL) scheme. (2) A calibrating read (CALR), in which the optimal read voltage that is determined from the bit count result of the VTR is applied. A CALR is

RUSS, AUGUST & KABAT



Source: SanDisk/WD-Toshiba, Paper 20.1, ISSCC 2018, A 512Gb 3b/Cell Flash Memory on a 96-Word-Line-Layer Technology

## COUNT V

## INFRINGEMENT OF U.S. PATENT NO. 7,671,664

79.    Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

80.    LFMS is the owner and assignee of United States Patent No. 7,671,664 titled "Charge pump control circuit and method." IPValue has the exclusive right to license the '664 Patent to Defendants and possesses substantial rights including the right to enforce the patent against Defendants. The '664 Patent was duly and legally issued by the United States Patent and Trademark Office on March 2, 2010. A true and correct copy of the '664 Patent is attached as Exhibit 5.

81.    Defendant Western Digital has known of the '664 Patent and its infringement of that patent since at least as early as March 26, 2021. On information and belief, Defendant Sandisk—as successor-in-part to Western Digital and by and through its officers and employees—has known of the '664 Patent and that Sandisk's products infringe that patent since at least as early as March 26, 2021.

82.     Defendants, knowing their products infringe the '664 Patent and with the specific intent for others to infringe the '664 Patent, have directly infringed (literally and equivalently) and induced and contributed to infringement by others of the '664 Patent by making, using, offering for sale, selling, and/or importing into the United States certain products and services that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '664 Patent, and continue to do so. By way of illustrative example, these infringing products and services include, without limitation, Defendants' SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, and all versions and variations thereof since the issuance of the '664 Patent ("Accused Products").

83.     Defendants have also infringed, and continue to infringe, claims of the '664 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendants know the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendants have been, and currently are, contributorily infringing the '664 patent, in violation of 35 U.S.C. § 271(c).

84.     Plaintiffs have complied with 35 U.S.C. § 287. At a minimum, Plaintiffs provided Defendants with pre-suit notice of infringement of the '664 Patent no later than March 26, 2021.

85.     Plaintiffs have sustained and are entitled to recover damages as a result of Defendants' infringement.

86.     As described above, Defendants' infringement of the '664 Patent has been knowing, deliberate, and willful, since at least as early as March 26, 2021, the date of IPValue's first letter to Western Digital and therefore the latest possible date

on which Western Digital knew of the '664 Patent and that its conduct constituted and resulted in infringement of the '664 Patent. IPValue again identified the '664 Patent and Defendants' infringement thereof several times thereafter, as described above, and also including through this Complaint. Defendants nonetheless have committed acts of direct and indirect infringement despite knowing that their actions constituted infringement of the valid and enforceable '664 Patent, despite a risk of infringement that was known or so obvious that it should have been known to Defendants, and/or even though Defendants otherwise knew or should have known that their actions constituted an unjustifiably high risk of infringement of that valid and enforceable patent. Defendants' conduct in light of these circumstances is egregious. Defendants' knowing, deliberate, and willful infringement of the '664 Patent entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

87.    The Accused Products satisfy all claim limitations of one or more claims of the '664 Patent. For example, the Accused Products infringe claim 1 of the '664 Patent. One, non-limiting, example of the Accused Products infringement is presented below.

88.    The Accused Products include "a charge pump control circuit" that includes "a clock control circuit configured to output a switch clock control signal based on a dynamic load." For example,



RUSS, AUGUST & KABAT



(Source: TechInsight Report Toshiba/Sandisk 96L 3D NAND Flash Circuit Analysis)

89.     In the Accused Products, the charge pump control circuit includes "a clock driver circuit configured to switch a clock signal supplied to a charge pump circuit between one of a first clock signal and a second clock signal based on the switch clock control signal, wherein the first clock signal has a higher frequency than the second clock signal." For example,





(Source: TechInsight Report Toshiba/Sandisk 96L 3D NAND Flash Circuit Analysis)

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.    A judgment in favor of Plaintiffs that Defendants have infringed, either literally and/or under the doctrine of equivalents, the '537 Patent, the '240 Patent, the '365 Patent, the '505 Patent, and the '664 Patent;

b.    A judgment and order requiring Defendants to pay Plaintiffs their

34

damages, costs, expenses, and pre-judgment and post-judgment interest for Defendants' infringement of the '537 Patent, the '240 Patent, the '365 Patent, the '505 Patent, and the '664 Patent;

      c.    A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Plaintiffs, including without limitation, pre-judgment and post-judgment interest;

      d.    A judgment that Defendants' infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

      e.    A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiffs their reasonable attorneys' fees against Defendants; and

      f.    Any and all other relief as the Court may deem appropriate and just under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED:  April 9, 2025          Respectfully submitted,

                          */s/ Brian D. Ledahl*
                          Brian D. Ledahl (CA SBN 186579)
                          bledahl@raklaw.com
                          Neil A. Rubin (CA SBN 250761)
                          nrubin@raklaw.com
                          RUSS AUGUST & KABAT
                          12424 Wilshire Blvd. 12th Floor
                          Los Angeles, CA 90025
                          Phone: (310) 826-7474
                          Facsimile: (310) 826-6991

                          ***Attorneys for Plaintiffs***
                          ***IPValue Management, Inc. and***
                          ***Longitude Flash Memory Solutions Ltd.***

RUSS, AUGUST & KABAT