KEKER, VAN NEST & PETERS LLP
AJAY S. KRISHNAN #222476
akrishnan@keker.com
RYAN K. WONG #267189
rwong@keker.com
ERIN E. MEYER #274244
emeyer@keker.com
STEPHANIE J. GOLDBERG #328710
sgoldberg@keker.com
ERIC B. HANSON #254570
ehanson@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

Attorneys for Defendants
WESTERN DIGITAL CORPORATION
and SANDISK CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IPVALUE MANAGEMENT, INC. and LONGITURE FLASH MEMORY SOLUTIONS, LTD. , <br><br> Plaintiffs, <br><br> v. <br><br> WESTERN DIGITAL CORPORATION, and SANDISK CORPORATION <br><br> Defendants. | Case No. 8:25-CV-00119-MWF (DFMx) <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:          June 9, 2025 <br> Time:          10:00 a.m. <br> Courtroom: 5A <br> Judge:         Hon. Michael W. Fitzgerald <br><br> Date Filed:  January 22, 2025 <br><br> Trial Date:  Not Yet Set |

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.  8:25-CV-00119-MWF (DFMX)

2886709

# NOTICE OF MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 9, 2025 at 10:00 a.m., or as soon thereafter as this matter can be heard, before the Honorable Michael W. Fitzgerald of the United States District Court for the Central District of California, located at 350 West First Street, Courtroom 5A, Los Angeles, CA 90012, Defendants Western Digital Corporation ("Western Digital") and Sandisk Corporation ("Sandisk") will and hereby do move to dismiss the Amended Complaint filed by Plaintiffs IPValue Management, Inc. ("IPValue Management") and Longitude Flash Memory Solutions Ltd. ("LFMS") (collectively, "IPValue").

Defendants Western Digital and Sandisk bring this motion on the grounds that the Amended Complaint fails to allege facts that plausibly establish direct, indirect, or willful patent infringement by Defendants of any of the five asserted patents. Therefore, Western Digital and Sandisk respectfully request that the court dismiss IPValue's claims for direct, induced, contributory, and willful infringement with regard to all five asserted patents.

Defendants' Motion to Dismiss is based on this Notice, the accompanying Memorandum of Points and Authorities, on such matters as may be judicially noticed, on any oral argument the Court may hear, and on such other and further information as the Court may consider.

# LOCAL RULE 7-3 STATEMENT

Defendants' Motion to Dismiss is made following the conference of counsel pursuant to L.R. 7-3, which took place on April 30, 2025.

1
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMX)

2886709

Respectfully submitted,

Dated: May 7, 2025                    KEKER, VAN NEST & PETERS LLP


By:  */s/ Ajay S. Krishnan*
     AJAY S. KRISHNAN
     RYAN K. WONG
     ERIN E. MEYER
     STEPHANIE J. GOLDBERG
     ERIC B. HANSON

     Attorneys for Defendants
     WESTERN DIGITAL CORPORATION
     and SANDISK CORPORATION

2

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMX)

2886709

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  SUMMARY OF ARGUMENT

The Amended Complaint fails to state a claim for direct, indirect, or willful infringement of any of the five asserted patents in suit.[1]

For all five patents, the Amended Complaint broadly accuses entire classes of solid-state memory products made by Defendants Western Digital Corporation ("Western Digital") or Sandisk Corporation ("Sandisk"). But its allegations are either unexplained or conclusory. For each asserted patent, Plaintiffs simply parrot the claim language and then paste an image or excerpted text with no explanation of how the image or text satisfies the claim language. There is therefore no basis even to understand how any accused product infringes, and there is simply no articulable, plausible basis to assert liability, as *Iqbal* and *Twombly* require. Instead, Plaintiffs seem to think that if the subject matter is sufficiently technical, the Court will throw up its hands, let the Plaintiffs skip past the pleadings stage, and advance straight to discovery. That pleading practice is impermissible.

Compounding these deficiencies, the infringement allegations for the '505 patent are not based on any actual ***products*** of the Defendants. Instead, the Amended Complaint bases its infringement allegations solely on the contents of an ***academic article*** that—on its face—does not even purport to describe any particular Western Digital or Sandisk product. To state the obvious, an academic article cannot infringe the '505 patent, which is a further reason why the infringement claims regarding the '505 patent should be dismissed.

When Western Digital raised this defect with Plaintiffs in March, Plaintiffs attempted to cure it with two superficial amendments in an Amended Complaint

---

[1] The first three asserted patents, referred to herein as the "Polishchuk Patents," have a common specification and the same inventor. These are U.S. Patent Nos. 8,633,537 (the "'537 patent"), 9,929,240 (the "'240 patent"), 11,456,365 (the "'365 patent") The remaining two patents are U.S. Patent Nos. 6,963,505 (the "'505 patent"), and 7,671,664 (the "'664 patent").

("FAC"), neither of which actually cures the defect. ***First***, Plaintiffs added a conclusory allegation that, "on information and belief," the article describes certain categories of Defendants' products. *Iqbal* and *Twombly* prohibit the use of that sort of conclusory allegation to state a claim. ***Second***, Plaintiffs allege, again in conclusory fashion, that during pre-suit negotiations, "Western Digital never denied that the [article] accurately described techniques utilized in its products." FAC, ¶ 75. That allegation is both false (an argument that Defendants cannot raise at the pleadings stage), and immaterial, as this type of "the Defendant failed to deny it" allegation in an out-of-court context cannot plausibly establish a fact, as required by *Iqbal*. If it could, then any plaintiff could legally state a claim by lodging arguments outside of court at a defendant and then alleging that any argument that the defendant failed to deny is established as true. That tactic doesn't even work ***in court***; it shouldn't be permitted outside of court.

In short, Plaintiffs' allegations fail to explain ***how*** Defendants' products actually satisfy each required element of the asserted patent claims, and do not contain sufficient "factual content" to allow this Court to "draw the reasonable inference" that Defendants infringed any claim of the asserted patents. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court should therefore dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

## II.    PROCEEDINGS AND STATEMENT OF ALLEGED FACTS

### A.    Relevant Procedural History

Plaintiffs IPValue Management, Inc. ("IPValue Management") and Longitude Flash Memory Solutions, Ltd. ("LFMS") (collectively, "IPValue") filed this case against Western Digital on January 22, 2025. IPValue Management is a patent licensing company that generates revenues from patent portfolios. FAC, ¶ 3. The Amended Complaint alleges that LFMS, an Ireland-based patent licensing company with hundreds of patents in its portfolio, provided IPValue Management with an exclusive license to the five asserted patents in this action. *Id.*, ¶¶ 2, 3.

2

2886709

On February 24, 2025, Western Digital announced publicly that it had completed a planned separation from its subsidiary, Sandisk.[2] As a result, Sandisk became an independent company.[3] Sandisk, which is based in Milpitas, California, designs and manufactures solid state drives ("SSDs") for storing electronic data and is responsible for designing and manufacturing components of SSDs that were sold by Western Digital prior to the separation. *See id.*, ¶ 8. On March 7, 2025, Sandisk filed a declaratory judgment action against IPValue in the Northern District of California for a declaration that it does not infringe the '537, '240, '365, '505, and '664 patents.[4]

Plaintiffs and Western Digital met and conferred on April 3, 2025 to discuss an earlier version of this Motion directed at the original Complaint. On April 9, 2025, the day before Western Digital's response to the Complaint was due, IPValue filed an Amended Complaint, adding Sandisk as a defendant and adding additional allegations regarding the '505 patent. Dkt. 24 ("FAC" or "Amended Complaint").

Alongside this Motion to Dismiss, Defendants have also filed a motion to stay this action while the case filed by Sandisk in the Northern District proceeds.

## B.    The Asserted Patents

The asserted patents all generally relate to semiconductor devices for non-volatile memory. The Polishchuk patents generally relate to a memory transistor comprising a particular multilayer charge trapping region where one layer is oxygen rich and another is oxygen lean. The '505 patent relates to methods for selecting a reference voltage level to find a level with a relatively low read error rate.[5] And the

---

[2] https://www.westerndigital.com/company/newsroom/press-releases/2025/2025-02-24-western-digital-completes-planned-company-separation; FAC, ¶ 8.

[3] https://shop.sandisk.com/company/newsroom/press-releases/2025/sandisk-celebrates-nasdaq-listing-after-completing-separation; FAC, ¶ 8.

[4] *Sandisk Corp. v. IPValue Mgmt., Inc. et al.*, 5:25-cv-02389-PCP.

[5] A reference voltage level is used to determine the state of a memory cell (*i.e.*,

2886709

'664 patent generally relates to a particular implementation of a charge pump

control circuit, which is used to provide boosted voltages above the power supply

voltage in electronic circuits.

### C.    Allegations Regarding Direct Infringement

IPValue broadly accuses "[b]y way of illustrative example" and "without

limitation" ***all*** of Western Digital's and Sandisk's "SSDs, OptiNAND HDDs, USB

Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash

memory, and all versions and variations thereof since the issuance of [the patents]."

FAC, ¶¶ 21, 37, 51, 66, 82. But for all asserted patents, the FAC simply quotes

elements of the claim language and then includes lightly annotated images (often

using the identical image for different claim elements) to supposedly show how all

accused Western Digital and Sandisk products infringe. The Amended Complaint

provides no explanation— beyond the cursory annotations on each image—to tie

together what the images show and the requirements of each claim element.

For example, for the three Polishchuk patents, the Amended Complaint

repeats the same image (shown below this paragraph) for multiple claim elements

across multiple patents. *Id.*, ¶¶ 29–32; 46; 58–61. The image appears to have been

annotated with both colors and labels, but IPValue offers no explanation for these

annotations or how they satisfy the requirements of the recited claim elements.

For the other claim elements of the Polishchuk patents, IPValue relies on different

images, but the Amended Complaint is similarly devoid of any explanation of how

the images show infringement of the recited patent claim by Defendants' products.

whether the memory cell holds a "1" or a "0").

4

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMX)

2886709

For the '505 patent, the Amended Complaint confusingly asserts that **_all_** Western Digital and Sandisk products meet the limitations of claim 1, *id.*, ¶ 71, but then immediately contradicts that assertion by stating that only "[c]ertain of the Accused Products utilize 96L or 112L 3d NAND Flash memory. . . ." *Id.*, ¶ 74. IPValue then alleges "[o]n information and belief" that an academic article from the International Solid-State Circuits Conference (ISSCC) "describes techniques utilized in the operation of the 96L and/or 112L Accused Products." *Id.*, ¶ 75. But the **_only_** support IPValue provides for that assertion is that during pre-litigation meetings between itself and Western Digital, IPValue "provided Western Digital with evidence that its products infringed the '505 patent, based in part upon the ISSCC 2018 96L Paper" and "Western Digital never denied" that the ISSCC article described its products. *Id.* Tellingly, the Amended Complaint does **_not_** allege (because IPValue has no basis to do so) that Western Digital ever suggested or admitted that the ISSCC article described any aspect of Defendants' products.

2886709

The Amended Complaint then quotes an excerpt from the ISSCC paper and provides a lightly annotated image to purportedly support IPValue's assertion of infringement for the '505 patent. The excerpt and annotated image that IPValue relies on in its Complaint is identical for every claim element, and shown below:

A key design challenge in recent years is enhancing the retry read performance of a 3D Flash memory. The valley tracking read [5] minimizes the BER by adaptively finding the optimal read voltage. We propose a smart $V_{th}$ tracking read (SVTR) to improve the retry read performance by reducing the number of tracking cycles, and to support a program-suspend read function. Figure 20.1.4 shows the SVTR waveform for a middle-page read. The read operation consists of two parts; (1) a $V_t$ tracking read (VTR), where the selected WL level moves from the MP1-state to the MP2-state, and then to the MP3-state. The optimal read voltage is to be tracked

for each state. The number of stages related to each state is parameterizable and the WL voltage step has enough resolution to guarantee the accuracy of VTR. A bit count operation is executed in parallel with VTR, and the bit whose $V_t$ is distributed between the read voltage of the $N^{th}$ stage read and $(N+1)^{th}$ stage read is counted concurrently with the $(N+2)^{th}$ stage read operation. VTR is used with a shielded-bitline current-sense (SBL) scheme [4], because SBL suppresses BL coupling noise thereby realizing a shorter read time [4]. The number of S/A latches in use is reduced by half in comparison with a conventional all bitline current sense (ABL) scheme. (2) A calibrating read (CALR), in which the optimal read voltage that is determined from the bit count result of the VTR is applied. A CALR is



Source: SanDisk/WD-Toshiba, Paper 20.1, ISSCC 2018, A 512Go 3b/Cell Flash Memory on a 96-Word-Line-Layer Technology

6

2886709

*See id.*, ¶¶ 76–78.

The excerpt and annotated image shown above are the ***entirety*** of IPValue's substantive allegations regarding Defendants' supposed infringement of the '505 patent. *See id.* The Amended Complaint is devoid of any explanation of how the excerpted text or image shows how any of Defendants' products satisfy each (or any) element of any '505 patent claim. Equally troubling, as shown above, nothing in the academic article cited in the Amended Complaint identifies or purports to describe the functionality or design of ***any*** actual product made, sold, or offered for sale by Western Digital or Sandisk that—let alone all of the products that IPValue accuses of patent infringement.

Finally, for the '664 patent, the Amended Complaint follows the same deficient format. It quotes the claim language and then immediately points to cryptic diagrams ostensibly taken (based on the source attribution of the charts) from an analysis of a Sandisk 96L Flash Circuit device. The entirety of IPValue's substantive infringement allegations for the '664 patent is reproduced below:

88.    The Accused Products include "a charge pump control circuit" that includes "a clock control circuit configured to output a switch clock control signal based on a dynamic load." For example,



DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMX)

2886709

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18   (Source: TechInsight Report Toshiba/Sandisk 96L 3D NAND Flash Circuit
19   Analysis)

20       89.    In the Accused Products, the charge pump control circuit includes "a
21   clock driver circuit configured to switch a clock signal supplied to a charge pump
22   circuit between one of a first clock signal and a second clock signal based on the
23   switch clock control signal, wherein the first clock signal has a higher frequency
24   than the second clock signal." For example,

25
26
27
28

8

2886709



(Source: TechInsight Report Toshiba/Sandisk 96L 3D NAND Flash Circuit Analysis)

*Id.*, ¶¶ 88–89.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a "plausible claim for relief[.]" *Iqbal*, 556 U.S. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This means that a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

9

Under this standard, a complaint alleging patent infringement "must support the grounds for that [allegation] with sufficient factual content." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (affirming dismissals under Rule 12(b)(6) for several allegations of patent infringement). A trial court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And in the Ninth Circuit, accused products ***must*** be identified by plaintiffs with "at least minimal specificity" so as to adequately put the defendant on notice of the claims against it and the grounds upon which those claims rest. *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, No. C 11-04049 JW, 2012 WL 1030031, at *2 (N.D. Cal. Mar. 22, 2012).

## IV.   ARGUMENT

### A.   The Amended Complaint fails to state a claim for direct infringement by Defendants of the Polishchuk patents.

IPValue's pleadings for the Polishchuk patents are speculative and lack sufficient detail to plead infringement. As the Federal Circuit in *Bot M8* explained, while "[t]he level of detail required in any given case will vary depending upon … the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device," a "plaintiff cannot assert a plausible claim for infringement. . . by reciting the claim elements and merely concluding that the accused product has those elements." *See Bot M8*, 4 F.4th at 1353. Applying this standard, the Federal Circuit affirmed the dismissal of a patent infringement claim where there were insufficient factual allegations showing that certain patent claim elements were met by the accused product. *See id.* at 1355 (affirming dismissal of a patent claim that required, *inter alia*, "gaming information" and "mutual authentication program" being stored together on the same memory because the complaint "failed to offer factual allegations that support a plausible inference that the [accused product] actually stores the gaming

10

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMX)

2886709

information and mutual authentication program together.").

The allegations in IPValue's Amended Complaint are even thinner than the allegations that were found inadequate in the *Bot M8* opinion. All the Amended Complaint does for the Polishchuk patents (and the other patents, too) is recite the language of each patent claim element, write "for example" after that, and then repeat the same few images with no explanation for how or why the image reflects the claim. FAC, ¶¶ 27–33, 43–47, 57–62. For the Polishchuk patents, IPValue repeats the following image nine times for different claim elements:



FAC, ¶¶ 29–32, 46, 58–61. While this picture appears to be a transmission electron microscopy (TEM) image of a Western Digital product (according to the label), the Amended Complaint provides no explanation of what the image is, how it was created or obtained, or most importantly, where the various colored rings on the image (and their corresponding labels) came from. Nevertheless, IPValue alleges without any factual basis that this image represents the structure of ***all*** of Western Digital and Sandisk's solid state memory products. *See id.*

Under *Bot M8*, these missing details cannot be overlooked given the complex nature of these patents. The Polishchuk patents are all directed to the chemical composition of various different layers in a microscopic memory transistor. Each

11

2886709

claim of the Polishchuk patents mentioned in the Amended Complaint requires, among other things, "a multi-layer charge-trapping region including a first nitride layer comprising an oxygen-rich nitride abutting the tunnel dielectric layer, and a second nitride layer comprising silicon-rich, oxygen-lean nitride overlying the first nitride layer" ('537 patent); "a multi-layer charge trapping layer . . . wherein the multi-layer charge trapping layer comprises a first dielectric layer disposed abutting a second dielectric layer, wherein the first dielectric layer includes oxygen-rich nitride and the second dielectric layer includes oxygen-lean nitride" ('240 patent); and "a multi-layer charge storing region" ('365 patent). These layer variations and compositions are therefore material to the Polishchuk patents' claims.

The Amended Complaint's treatment of these different layers, however, is pure speculation without any factual basis. IPValue offers no explanation of, or factual allegations to support, how or why the TEM image was colored or annotated as it was, nor is there any evidence that any (let alone all) of Defendants' products plausibly meet each layer-composition limitation. Indeed, the annotated images do ***not*** identify or substantiate the presence of, for example, any "oxygen-rich" or "oxygen-lean" layer, *see* FAC ¶¶ 31, 46, where the requisite "first" and "second" nitride layers are found in Defendants' products, *see id.*, or any "multi-layer charge storing region." *See id.*, ¶ 60. By asserting without any factual basis that ***all*** of Defendants' products have, for example, a multi-layer charge trapping (or storing) layer and the specific "oxygen-rich" or "oxygen-lean" composition requirements for each layer, IPValue has done exactly what it is not permitted to do in a patent complaint—recite the different claim elements and simply "conclud[e] that the accused product has those elements." *See Bot M8*, 4 F.4th at 1353.

Courts consistently require much more factual content than IPValue provides here. For example, in *North Star Innovations, Inc. v. Etron Technology America Inc.*, the court found conclusory statements about memory technology insufficient to plead infringement, noting, "[i]n drafting its Second Amended Complaint, North

12

Star must take care to describe the features and components of the 512Mb DDR2 SDRAM and 256Mb DDR SDRAM with a level of detail sufficient to plausibly demonstrate how each limitation is practiced by Etron's products." No. CV 8:16-00599 SJO (FFMx), 2016 WL 9046909, at *5 (C.D. Cal. Sept. 21, 2016). As explained above, the Amended Complaint fails to provide a level of detail sufficient to plausibly demonstrate how any of Defendants' products meets the layer composition and layout requirements of each element of the Polishchuk patent claims.

Further, merely pointing to screenshots or photographs is not enough, on their own, to plausibly allege patent infringement, for the same reasons articulated above. *See Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018) ("The Court disagrees with Plaintiff that the screenshots themselves constitute the requisite factual allegations. . . . Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met."). Finally, given the complexity of the technology at issue, the Amended Complaint must allege sufficient facts to put Defendants on notice of how their products purportedly infringe. *MACOM Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*, No. 2:16-cv-02859-CAS (PLAx), 2017 WL 3449596, at *5 (C.D. Cal. June 5, 2017) ("The disputed pieces of technology are complex and highly technical, but [the patent holder's] allegations are silent as to how this technology functions, what innovations are protected by the Subject Patents, and how [the defendant]'s products infringe upon the Subject Patents' claims."). As explained above, the Amended Complaint falls far short of this legal requirement.

Beyond the failures mentioned above, the other non-TEM images relied on in the Amended Complaint for the Polishchuk patents are equally conclusory, and fail for the same reasons noted above. *See* FAC, ¶¶ 28, 33, 44, 45, 47, 62. Even worse,

13

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMX)

2886709

these non-TEM images do *not* mention any of Defendants' products at all, and IPValue never alleges that what is shown in these images is from, or is even related to, the product shown in the TEM image. *Id.* IPValue's failure to plead that at least one product of Defendants meets every element for any claim of the Polishchuk patents also warrants dismissal. *See Tech. in Ariscale, LLC v. Razer USA, Ltd.*, 703 F. Supp. 3d 1153, 1159–60 (C.D. Cal. 2023) ("[A] complaint for direct patent infringement must include an allegation that at least one accused product, or multiple accused products used conjunctively, perform each and every element of at least one asserted claim. . . . That deficiency alone warrants dismissal.") (citing *TeleSign Corp. v. Twilio, Inc.*, No. CV-16-2106 PSG (SSx), 2016 WL 4703873, at *3 (C.D. Cal. Aug. 3, 2016)).

Because the Amended Complaint's conclusory allegations of direct infringement of each of the Polishchuk patents fail to meet the pleading standards under *Iqbal* and *Bot M8*, the Court should grant Defendants' motion as to the Polishchuk patents.

### B. The Amended Complaint fails to state a claim for direct infringement by Defendants of the '505 patent.

IPValue's patent-infringement allegations for the '505 patent are similarly bereft of *any* facts that would suggest any of Defendants' products infringe. The Amended Complaint's recitations are exactly the sort of "[t]hreadbare recitals of the elements. . . supported by mere conclusory statements" that fall short of the Rule 8's pleading requirements. *Iqbal*, 556 U.S. at 678.

### 1. IPValue fails to provide any comparison of the '505 patent claim elements to any product of Defendants.

The Amended Complaint fails to state a claim for infringement of the '505 patent because it does not plausibly link the ISSCC academic article on which it relies to any Western Digital or Sandisk product, and therefore fails to show how any of Defendants' products satisfy every element of any '505 patent claim.

14

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMX)

2886709

The ISSCC paper excerpt and images featured by IPValue in the Amended Complaint—the sole evidence on which IPValue relies to supposedly demonstrate infringement for this patent—are repeated verbatim for each claim element of the '505 patent. FAC, ¶¶ 76–78. But IPValue fails to show that there is any connection between the excerpt and images from the ISSCC paper, and any Western Digital or Sandisk product. *See id.* That is because the ISSCC excerpt and images are from a 2018 academic article that was presented at a conference. They did not come from a product manual, specification sheet, or any other form of technical product documentation for Defendants' products. And nothing in the excerpt or images indicates that they correspond to or describe the inner workings of any Western Digital or Sandisk product, let alone the sole product IPValue appears to accuse. FAC, ¶ 74.

To the contrary, the ISSCC article expressly states that the authors only "***propose*** a smart $V_{\text{th}}$ tracking read (SVTR) to improve the retry read performance by reducing the number of tracking cycles, and to support a program-suspend read function." *Id.*, ¶¶ 76–78 (emphasis added). The fact that the ISSCC article is only "propos[ing]" a feature does not plausibly show infringement; Instead, the only plausible inference is that the feature is under research has not been implemented. This language is also directly at odds with the Amended Complaint's accusation that "Defendants' SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, ***and all versions and variations thereof since the issuance of the '537*** [sic] ***Patent***" infringe. *Id.*, ¶ 66 (emphasis added). A "proposed" idea in a 2018 academic article cannot possibly show infringement since November 2005, which is when the '505 patent issued. *Id.*, ¶ 64.

To survive a motion to dismiss, the Amended Complaint must have "some factual allegations that, when taken as true, articulate ***why*** it is plausible that the accused product infringes the patent claim." *Cyph, Inc. v. Zoom Video Commc'ns,*

15

2886709

*Inc.*, No. 22-cv-00561-JSW, 2022 WL 1556417, at *2 (N.D. Cal. May 17, 2022)
(quoting *Bot M8*, 4 F.4th at 1353) (emphasis added). Here, there are no factual
allegations linking any Western Digital or Sandisk product to any claim element of
the '505 patent because—as explained above—the excerpt and images from the
ISSCC paper cannot supply a factual basis for linking any of Defendants' products
to any '505 patent-claim element. In fact, a trial court in this District recently
dismissed a complaint that similarly relied on an image to allege patent
infringement because the image was not sufficiently tied to any allegedly infringing
product or infringing conduct of the defendant. *See Kolon Indus., Inc. v. Hyosung
Advanced Materials Corp.*, No. SA CV 24-00415 JVS-JDE, 2024 WL 3915072, at
*4 (C.D. Cal. July 26, 2024).

In *Kolon*, the plaintiff accused a special nylon yarn incorporated into an
automotive tire, and relied on a photo of the yarn to allege patent infringement. *Id.*
at *1. The court found that the photo did not plausibly show that the accused yarn
was actually incorporated into a tire imported into the United States: "It is not clear
from the FAC that the same product incorporated into the Hankook tires or other
tires ultimately sold in the United States is in fact the depicted product. . . . Kolon
must plausibly allege that the depicted and allegedly infringing product [in the
image] is the same product used in the tires." *Id.* Here, the connection between
IPValue's allegations and any Western Digital or Sandisk product is even more
tenuous because the academic-article image relied on by IPValue does not suggest
that it relates to any product at all (as opposed to being research for a technical
conference), let alone that the technology depicted in the image was incorporated
into a specific product that was made in, sold in, or imported into the United States
by Defendants.

IPValue is well aware of these deficiencies. In fact, after the parties met and
conferred in early April about this issue, IPValue filed an Amended Complaint to
add the allegation that "[o]n information and belief, the ISSCC 2018 96L Paper

16

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMX)

2886709

describes techniques utilized in the operation of the 96L and/or 112L Accused Products." FAC, ¶ 75. But these additional allegations are still insufficient to plead direct infringement because there is no factual basis to support them. *See Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Rsch. Inst.*, No. 19-cv-05784-JST, 2020 WL 7392909, at *4 (N.D. Cal. July 23, 2020) ("'Despite the common appearance of' the phrase 'on information and belief' in practice, 'it is not a recognized pleading device under the rules.'") (quoting *Delphix Corp. v. Actifo, Inc.*, C 13-4613 RS, 2014 WL 4628490, at *1 (N.D. Cal. Mar. 19, 2014)). As *Delphix* explained:

> Rule 11(b) of the Federal Rules of Civil Procedure provides that by submitting a pleading to the court, the signatory is always certifying that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

*Delphix*, 2014 WL 4628490, at *1. IPValue has not conducted any "inquiry reasonable under the circumstances" to support its new allegations. *See id.*

Instead, IPValue tries to bolster its new allegations by pointing to Western Digital's silence during licensing discussions prior to the lawsuit. FAC, ¶ 75. But Western Digital's purported failure to comment on the ISSCC paper cannot plausibly suggest that the article accurately describes any Western Digital or Sandisk product, let alone the one product (Western Digital's SN550 SSD) that IPValue mentions. *See, e.g.*, *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 338 (S.D.N.Y. 2003) (rejecting the notion that silence can be used as evidence of liability when there is no legal obligation to speak). Moreover, the Amended Complaint says nothing about what IPValue specifically told Western Digital about the ISSCC paper. IPValue also suggests that it "provided Western Digital with evidence that its products infringed the '505 patent, ***based in part upon the ISSCC***

17

2886709

*2018 96L Paper*." FAC, ¶ 75 (emphasis added). But that is irrelevant to Defendants' Motion to Dismiss, because the only evidence IPValue relies upon in its Amended Complaint for the '505 patent is the ISSCC article.

Because there is no plausible link between the ISSCC excerpt and images on which IPValue relies for its '505 patent-infringement allegations and any actual Western Digital or Sandisk product, IPValue's patent-infringement allegations fail under *Twombly* and *Iqbal,* and Defendants' Motion to Dismiss should be granted.

### 2. The Amended Complaint also lacks sufficient detail to state a plausible claim of patent infringement for the '505 patent.

Even if the academic-article excerpts and images relied upon by IPValue for its '505 patent allegations could be attributed to any of Defendants' products (it cannot), the ***substance*** of the material on which the Amended Complaint relies is insufficient to state a claim of patent infringement under *Twombly* and *Iqbal*.

As with the Polishchuk patents, a "plaintiff cannot assert a plausible claim for infringement. . . by reciting the claim elements and merely concluding that the accused product has those elements." *See Bot M8*, 4 F.4th at 1353. But all the Amended Complaint does is recite the language of a '505 patent claim element, write "for example," and then repeat the same quotation and annotated images for each of the three claim elements. FAC, ¶¶ 76–78. IPValue does nothing to connect the article's quoted language with the claim language, and image annotations also provide nothing to support a plausible inference of infringement—they merely repeat the language of the '505 patent claims without any explanation as to why or how the excerpt and images show that each of the claim elements has been met by a Western Digital or Sandisk product. That is insufficient to support a claim for infringement of the claimed memory-technology method. *See MACOM*, 2017 WL 3449596, at *5; *N. Star Innovations*, 2016 WL 9046909, at *5; *see also Lexington Luminance LLC v. Bulbrite Indus., Inc.*, No. 22-3787, 2023 WL 143911, at *5 (D.N.J. Jan. 10, 2023) (concluding that the "detail provided in Lexington's

18

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMX)

2886709

1  allegations is insufficient because the technology is complex and the limitations at

2  issue are material.").

3      In sum, even beyond IPValue's failure to connect any accused Western

4  Digital or Sandisk product with the academic article in the Amended Complaint, the

5  conclusory nature of IPValue's allegations is a second and independent reason to

6  grant Defendants' Motion to Dismiss.

7      **C.    The Amended Complaint fails to state a claim for direct
           infringement of the '664 patent by Western Digital or Sandisk.**

8

9      IPValue's assertions about the '664 patent fail for similar reasons as the

10  Polischuk patents and the '505 patent. As with the other patents, the Amended

11  Complaint simply recites claim language, says "[f]or example," and then inserts

12  images (this time ostensibly from a third-party report analyzing an unknown model

13  of a Toshiba/Sandisk 96L 3D NAND Flash Circuit), upon which it places a few

14  cryptic annotations. FAC, ¶¶ 88–89. These pleadings are conclusory statements

15  bereft of factual content that could plausibly support a claim for infringement.

16      For example, IPValue copies excerpts of a circuit diagram and provides the

17  following cryptic explanation: "Control input B4093 came from one of the outputs

18  of the comparator. It enables the changing of the current sink that discharges the

19  capacitor. This makes the capacitor as a dynamic load [sic]." *Id.*, ¶ 88. These

20  sentences are incomprehensible (there is no indication of what "outputs of the

21  comparator" is referring to, nor are the "current sink" and "capacitor" identified in

22  the diagrams), and they do not mention or identify the claimed "clock control

23  circuit" or explain how or why what is shown in the images show that any "clock

24  control circuit" is "configured to output a switch clock control signal based on a

25  dynamic load." *Id.* For the only other claim element, IPValue provides additional

26  circuit diagrams with a similarly impenetrable annotation: "The output B4624 goes

27  to supply the clock to the charge pump." *Id.*, ¶ 89. Again, this statement provides no

28  explanation about how or why any Western Digital or Sandisk product, let alone a

19

2886709

1  specific product of Defendants, actually meets the claim element, which requires

2  "clock driver circuit configured to switch a clock signal supplied to a charge pump

3  circuit between one of a first clock signal and a second clock signal based on the

4  switch clock control signal, wherein the first clock signal has a higher frequency

5  than the second clock signal." *Id.*

6      The Amended Complaint again provides only conclusory images with no

7  plausible facts to support its infringement allegations. For these reasons, IPValue's

8  claim of patent infringement for the '664 patent must also be dismissed. *See Bot*

9  *M8*, 4 F.4th at 1353 (a "plaintiff cannot assert a plausible claim for infringement …

10  by reciting the claim elements and merely concluding that the accused product has

11  those elements."); *see also N. Star Innovations*, 2016 WL 9046909, at *5;

12  *Chapterhouse*, 2018 WL 6981828, at *2; *MACOM*, 2017 WL 3449596, at *5,

13  *Ariscale*, 703 F. Supp. 3d 1153, 1159–60.

14      **D.    The Complaint also fails to state a claim for induced, contributory, or willful infringement of the patents-in-suit.**

15

16      IPValue's failure to sufficiently plead direct infringement of the asserted

17  patents is also fatal to its claims of induced, contributory, and willful infringement

18  for each of the asserted patents. *See Kolon*, 2024 WL 3915072 at *5 ("Each of these

19  [indirect infringement and willfulness] claims depends on an underlying claim of

20  direct infringement. Accordingly, the Court would dismiss these claims at least for

21  the reasons stated above."); *see also AlterG Inc. v. Boost Treadmills LLC*, 388 F.

22  Supp. 3d 1133, 1143 (N.D. Cal. 2019) (dismissing willful infringement claim at

23  motion-to-dismiss stage because "a finding of direct infringement is a prerequisite

24  for willful infringement."); *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279

25  F.3d 1022, 1033 (Fed. Cir. 2002) ("It is well settled that there can be no inducement

26  of infringement without direct infringement by some party."); *In re Bill of Lading*

27  *Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012)

28  ("It is axiomatic that '[t]here can be no inducement or contributory infringement

20

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMX)

2886709

without an underlying act of direct infringement.'") (citation omitted).

Therefore, the Court should grant Defendants' Motion to Dismiss with respect to these claims as well.

**V.    CONCLUSION**

The Amended Complaint fails to provide anything more than conclusory assertions of patent infringement for all five asserted patents. For the reasons stated above, Western Digital and Sandisk respectfully request that the Amended Complaint be dismissed.

Dated: May 7, 2025                    KEKER, VAN NEST & PETERS LLP


By:  /s/ *Ajay S. Krishnan*
AJAY S. KRISHNAN
RYAN K. WONG
ERIN E. MEYER
STEPHANIE J. GOLDBERG
ERIC B. HANSON

Attorneys for Defendants
WESTERN DIGITAL CORPORATION
and SANDISK CORPORATION

21

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMX)

2886709