KEKER, VAN NEST & PETERS LLP
AJAY S. KRISHNAN #222476
akrishnan@keker.com
RYAN K. WONG #267189
rwong@keker.com
ERIN E. MEYER #274244
emeyer@keker.com
ERIC HANSON #254570
ehanson@keker.com
STEPHANIE J. GOLDBERG #328710
sgoldberg@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendants
WESTERN DIGITAL CORPORATION and
SANDISK CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| IPVALUE MANAGEMENT, INC. and LONGITUDE FLASH MEMORY SOLUTIONS, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> WESTERN DIGITAL CORPORATION and SANDISK CORPORATION, <br><br> Defendant. | Case No. 8:25-CV-00119-MWF (DFMx) <br><br> **DEFENDANTS WESTERN DIGITAL CORPORATION AND SANDISK CORPORATION'S NOTICE OF MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date: June 9, 2025 <br> Time: 10:00 a.m. <br> Courtroom: 5A <br> Judge: Hon. Michael W. Fitzgerald <br><br> Date Filed: January 22, 2025 <br><br> Trial Date: Not Yet Set |

# NOTICE OF MOTION

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 9, 2025 at 10:00 a.m., or as soon thereafter as this matter can be heard, before the Honorable Michael W. Fitzgerald of the United States District Court for the Central District of California, located at 350 West First Street, Courtroom 5A, Los Angeles, CA 90012, Defendants Western Digital Corporation ("Western Digital") and Sandisk Corporation ("Sandisk") will, and hereby do, move the Court for an order staying this case pending final resolution of Case No. 5:25-cv-02389-PCP, *Sandisk Corporation v. IPValue Management, Inc. et al.*, currently pending in the United States District Court for the Northern District of California.

The Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the attached declarations, the pleadings on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

# LOCAL RULE 7-3 STATEMENT

This motion is made following a conference of counsel pursuant to Local Rule 7-3, which took place on April 30, 2025.

Respectfully submitted,

Dated: May 7, 2025                KEKER, VAN NEST & PETERS LLP


By:  /s/ *Erin E. Meyer*
AJAY S. KRISHNAN
RYAN K. WONG
ERIN E. MEYER
STEPHANIE J. GOLDBERG
ERIC HANSON

Attorneys for Defendants
WESTERN DIGITAL CORPORATION and
SANDISK CORPORATION

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.      INTRODUCTION ............................................................................. 1

II.     BACKGROUND ............................................................................... 2

III.    LEGAL STANDARD ......................................................................... 5

IV.     ARGUMENT .................................................................................... 7

      A.      A stay in this action will streamline the issues and allow the case to proceed in the more convenient forum. .......................... 7

            1.      Sandisk's DJ Action will resolve the primary issues in this case ................................................................................. 7

            2.      Sandisk's DJ Action should be prioritized because the Northern District of California is a more convenient venue. ................................................................................. 8

            3.      A stay will prevent conflicting decisions from two district courts. ....................................................................... 11

      B.      The balance of equities favors a stay. ................................... 12

      C.      The customer-suit exception independently supports a stay for Western Digital ................................................................. 13

V.      CONCLUSION ............................................................................... 16

DEFENDANTS WESTERN DIGITAL CORPORATION AND SANDISK CORPORATION'S NOTICE OF MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMx)

2889982

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
  666 F. Supp. 2d 1109 (C.D. Cal. 2009)............................................................. 10

*Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*,
  No. 5:13–cv–05430 EJD, 2014 WL 2759571 (N.D. Cal. June 17,
  2014).................................................................................................................. 13

*Card Activation Techs. v. Pier 1 Imps., Inc.*,
  No. 09 C 2021, 2009 WL 2956926 (N.D. Ill. Sept. 14, 2009)............................ 14

*Chia-Ling Huang v. Lowe's Home Ctrs.*,
  No. 2:18-cv-10545 SJO (JEM), 2019 WL 9997346 (C.D. Cal. Aug.
  8, 2019).............................................................................................................. 6

*Clinton v. Jones*,
  520 U.S. 681 (1997) ........................................................................................... 6

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ........................................................................................... 5

*Document Sec. Sys., Inc. v. Seoul Semiconductor Co.*,
  No. SACV 17-00981 JVC (JCGx), 2018 WL 10670109 (C.D. Cal.
  Mar. 26, 2018) ............................................................................................ 12, 13

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ..................................................................... 9, 10

*In re Google Inc.*,
  588 F. App'x 988 (Fed. Cir. 2014)................................................................. 6, 15

*In re Google LLC*,
  58 F.4th 1379 (Fed. Cir. 2023) .......................................................................... 11

*In re Nintendo of Am., Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014) ..................................................................... 6, 13

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
  89 F.R.D. 497 (C.D. Cal. 1981) ......................................................................... 9

iii

DEFENDANTS WESTERN DIGITAL CORPORATION AND SANDISK CORPORATION'S NOTICE OF
MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMx)

2889982

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005)......................................................................6, 7, 12

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
    518 F.3d 897 (Fed. Cir. 2008) ...........................................................................8, 9

*PersonalWeb Techs., LLC v. Facebook, Inc.*,
    No. 5:13-CV-01356-EJD, 2014 WL 116340 (N.D. Cal. Jan. 13,
    2014) ..............................................................................................................12

*Ride & Show Eng'g, Inc. v. Walt Disney Parks & Resorts, L.L.C.*,
    No. CV 03-6895 GAF, 2006 WL 8435021 (C.D. Cal. Jan. 27,
    2006) ........................................................................................................11, 13

*Rivers v. Walt Disney Co.*,
    980 F. Supp. 1358 (C.D. Cal. 1997) ...................................................................6

*Seville Classics, Inc. v. Neatfreak Group, Inc.*,
    2016 WL 6661176 (C.D. Cal. Apr. 1, 2016) ....................................................15

*Tissue Anchor Innovations, LLC v. Fountain Valley Reg'l Hosp.*,
    No. SACV 19-00791, 2019 WL 8219779 (C.D. Cal. Nov. 25, 2019).........12, 13

*Upaid Sys. Ltd. v. CleanDan*,
    No. SA CV 18-00619-AB, 2018 WL 5279567 (C.D. Cal. July 25,
    2018) ........................................................................................................13, 14

DEFENDANTS WESTERN DIGITAL CORPORATION AND SANDISK CORPORATION'S NOTICE OF
MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMx)
2889982

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In the First Amended Complaint, Plaintiffs IPValue Management, Inc. and Longitude Flash Memory Solutions, Ltd. ("Plaintiffs") added Sandisk Corporation as a defendant in this action.  But a parallel action brought by Sandisk against Plaintiffs is already proceeding in the United States District Court for the Northern District of California.  Defendants Western Digital and Sandisk now seek a stay of this action pending final resolution of that parallel action in the Northern District of California.  Both this case and the parallel action involve overlapping parties, the same patents, and the same accused technologies (namely, products containing certain of Sandisk's flash-memory technology).  Staying this matter would promote judicial efficiency, conserve court and party resources, and reduce the risk of conflicting decisions across forums.

Some context is helpful: Until recently, Sandisk was a wholly owned subsidiary of Western Digital, but the two companies separated on February 21, 2025 and are now independent entities.[1]  The complaint in this case was filed on January 22, 2025 against Western Digital.  Given that Plaintiffs had accused Sandisk's technology of patent infringement, Sandisk—unable to file a motion for transfer in the instant action, having not yet been named as a party—filed a declaratory judgment action in the Northern District of California (where it is headquartered) on March 7, 2025, seeking a declaration that Sandisk technology does not infringe Plaintiffs' patents (hereinafter, "Sandisk's DJ Action").  It was not until over a month later—on April 9, 2025, the day before Western Digital's response to Plaintiffs' initial complaint was due—that Plaintiffs amended their

---

[1] Of note, Western Digital announced publicly on October 30, 2023 that it would spin off its flash storage business. *See* https://www.westerndigital.com/company/newsroom/press-releases/2024/2024-03-05-western-digital-announces-update-on-company-separation.

2889982

complaint to add Sandisk as a party to this case, resulting in two parallel actions currently proceeding on the same subject matter in two separate district courts.

This Court should stay this case and allow Sandisk's DJ Action against Plaintiffs to take priority because the Northern District is the more convenient venue for this suit, as the majority of relevant witnesses and evidence are located there. This Court should thus find exception to the application of the first-to-file rule.

Additionally, the well-established customer-suit exception provides an independent basis for a stay as to Defendant Western Digital. Indeed, the resolution of Sandisk's suit would resolve the vast majority (if not all) of the claims in this case, as Plaintiffs' allegations here are targeted at Sandisk's flash-memory technology—both for flash-memory products released by Sandisk while it was a part of Western Digital and after, and for Western Digital hard-disk-drive products that include a flash-memory product from Sandisk, released before and after the separation. Resolution of the issues presented in this case through the Sandisk DJ Action is nearly certain because Western Digital has agreed to be bound by the final determinations in the Sandisk DJ Action regarding Plaintiffs' claims of infringement for the Sandisk technology, and patent validity, if litigated.

Notably, a stay would not harm Plaintiffs. They do not compete with Western Digital or Sandisk. The remedy they seek is monetary damages—damages they can, and likely will, seek from Sandisk in the Sandisk DJ Action, should the merits warrant. When, as here, the alternative to a stay is forcing the parties to litigate across two different forums, duplicating efforts, and risking inconsistent judgments, the appropriate outcome is plain: this case should be stayed.

## II.    BACKGROUND

Plaintiffs IPValue Management, Inc. ("IPValue") and Longitude Flash Memory Solutions Ltd. ("LFMS") are non-practicing, patent-licensing entities based in Northern California and Ireland, respectively. *See* Compl. ¶¶ 2–3, 5–6.

2

Plaintiffs brought this suit against Western Digital on January 22, 2025, alleging infringement of five patents:  U.S. Patent No. 8,633,537 ("'537 Patent"); U.S. Patent No. 9,929,240 ("'240 Patent"); U.S. Patent No. 11,456,365 ("'365 Patent"); U.S. Patent No. 6,963,505 ("'505 Patent"); and U.S. Patent No. 7,671,664 ("'664 Patent"), collectively, the "Asserted Patents."  The Asserted Patents all relate at a high level to flash memory—either to transistors used in flash memory or flash-memory circuits.  *See generally* Compl.  Plaintiffs allege that Western Digital infringes the Asserted Patents with its "3D NAND flash memory, and all versions and variations thereof."  *Id.* at ¶ 19.

Defendant Western Digital is a leading innovator in the global data storage industry.  Decl. of Karin Werder in Supp. of Def. Western Digital Corp. and Sandisk Corp.'s Mot. to Stay ("Werder Decl.") ¶ 3.  Since its founding in 1970, Western Digital products have revolutionized how people and companies preserve digital content across a range of devices.  *Id.*  Western Digital's principal place of business is in San Jose, California.  *Id.*  Western Digital primarily sells hard-disk-drive storage products ("HDDs").  *Id.*

In May 2016, Western Digital acquired Sandisk—a global leader in flash-memory solutions.  Werder Decl. ¶ 4; Decl. of Anne Koh in Supp. of Def. Western Digital Corp. and Sandisk Corp.'s Mot. to Stay ("Koh Decl.") ¶ 3.  Sandisk primarily sells solid-state-drive flash-storage products ("SSDs").  Koh Decl. ¶ 3.  After the acquisition, Western Digital sold flash-storage solutions under both the "Sandisk" and "Western Digital" brand names, but most of these flash-storage products were Sandisk-branded products.  Werder Decl. ¶ 4; Koh Decl. ¶ 3.  Flash-storage products that were sold under the Western Digital brand name merely incorporated Sandisk's flash memory into Western Digital's end products.  Werder Decl. ¶ 4.

Following through on an October 2023 announcement, Western Digital completed its spin-off of Sandisk's flash-storage business on February 21, 2025.

3
DEFENDANTS WESTERN DIGITAL CORPORATION AND SANDISK CORPORATION'S NOTICE OF
MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMx)

2889982

Werder Decl. ¶ 5; *see also* Koh Decl. ¶ 4.  Notably, as part of the separation between the two companies, Sandisk agreed to accept any liability relating to pre-separation actions by Western Digital as they pertain to flash-memory products while Sandisk was a subsidiary of Western Digital—that is, technology and products all now owned by Sandisk—regardless of whether those products were released under the Western Digital or Sandisk brands.  Werder Decl. ¶ 7; Koh Decl. ¶ 7.

Sandisk has almost 14,000 employees worldwide currently.  Koh Decl. ¶ 4. Sandisk has four offices in California: one in Milpitas, which serves as its corporate headquarters; one in Irvine; one in San Jose; and one in Folsom.  *Id.*  Sandisk's Milpitas office employs around 1,500 employees, that is, the great majority of its U.S. employees and around 13% of its total global employees, and it houses the company's corporate operations.  *Id.* ¶¶ 4–5.  Employees who work on the design of Sandisk's flash memory and its control circuits for flash memory—the focus of Sandisk's flash technology accused here—are based in the Milpitas office; none are in the Irvine office.  *See id.* ¶ 6.  Sandisk's Irvine office is home to less than 3% of Sandisk's employees globally.  *Id.* ¶ 5.  Employees in the Irvine office focus mainly on Sandisk's enterprise products (not accused here); about 25 of the Irvine employees are flash design employees, however, they do not work on the design of the flash memory or the control circuits for flash memory and instead work on flash product controllers, which relate to how the memory interfaces with an external host, like a cloud server.  *See id.* ¶ 6.

As a result of the Sandisk split, Western Digital has entirely exited the standalone flash-memory business.  Werder Decl. ¶ 5.  Regarding the accused products in this case, although Western Digital sells some HDD products that utilize a small amount of flash memory, these products merely incorporate Sandisk's flash memory; the flash memory is not something Western Digital designs or manufactures itself.  *Id.*  In other words, Western Digital is now merely

4

2889982

Sandisk's customer.  Sandisk knows how the flash memory accused of infringement works; Western Digital does not.

Weeks after the separation between Defendants was finalized, on March 7, 2025, Sandisk—not yet a party to this case—filed a declaratory judgment action against IPValue and LFMS in the United States District Court for the Northern District of California seeking a declaration of non-infringement of all five of the Asserted Patents in this case for its flash memory technology, *i.e.*, the same technology accused here.  *See Sandisk Corp. v. IPValue Mgmt., Inc.*, Case No. 5:25-cv-02389-PCP (Sandisk's DJ Action).  That case is in its early stages: IPValue and LFMS have not yet responded to the complaint, discovery has not commenced, and trial is not set.  *See id.*  Western Digital has agreed to be bound by any judgment of infringement or validity (if any) in the Sandisk DJ Action if this case is stayed pursuant to this motion.  Werder Decl. ¶ 8.

On April 9, 2025, Plaintiffs filed a first amended complaint in this action, adding Sandisk as a defendant and making other minor additional allegations. Plaintiffs' First Amended Complaint ("FAC") alleges that Western Digital and Sandisk infringe the Asserted Patents by making, using, or offering for sale the same products it listed in the initial complaint, through its "3D NAND flash memory, and all versions and variations thereof[.]" *See, e.g.*, FAC ¶ 21.  This case is also in its early stages:  Western Digital and Sandisk filed a motion to dismiss concurrently with the instant motion, discovery has not commenced, and trial is not set.

## III.    LEGAL STANDARD

When cases involving substantially overlapping issues are pending before two federal district courts, there is a strong preference to avoid duplicative litigation.  *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976).  To avoid wasted resources, courts should employ a flexible approach—not a mechanical solution or "precise rule," *id.* —which includes

2889982

1    "staying proceedings if the other suit is so closely related that substantial savings of

2    litigation resources can be expected," *In re Google Inc.*, 588 F. App'x 988, 991

3    (Fed. Cir. 2014).  Although "courts normally give precedence to the first case that is

4    filed[,]" *Chia-Ling Huang v. Lowe's Home Ctrs.*, No. 2:18-cv-10545 SJO (JEM),

5    2019 WL 9997346, at *2 (C.D. Cal. Aug. 8, 2019), "[w]ise judicial administration

6    must also take into consideration the comparative convenience of both venues for

7    resolving the matter[,]" *In re Google*, 588 F. App'x at 991 (citing *Futurewei Techs.,*

8    *Inc. v. Acacia Rsch. Corp.,* 737 F.3d 704, 708 (Fed. Cir. 2013) ("Justification for an

9    exception may be found in the convenience and availability of witnesses …")).

10       A district court has "broad discretion to stay proceedings as an incident to its

11   power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  In

12   exercising this discretion, a court must weigh the competing interests of the various

13   parties that may be affected by the decision to grant or refuse to grant a stay.

14   *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).  Specifically, the

15   court must consider the so-called *Lockyer* factors: (1) the possible damage or harm

16   to the non-moving party which may result from granting a stay; (2) the hardship or

17   inequity the moving party may suffer in being required to go forward with the case

18   if the request for a stay is denied; and (3) "the orderly course of justice measured in

19   terms of the simplifying or complicating of issues, proof, and questions of law

20   which could be expected to result from a stay."  *Id.*  A stay is appropriate when it

21   serves the interests of judicial economy and efficiency.  *See Rivers v. Walt Disney*

22   *Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997).

23       Additionally, courts regularly invoke the customer-suit exception to the first-

24   to-file rule in staying customer litigation when there are proceedings against both a

25   manufacturer and a customer.  The Federal Circuit has explained that "[w]hen a

26   patent owner files an infringement suit against a manufacturer's customer and the

27   manufacturer then files an action of noninfringement or patent invalidity, the suit by

28   the manufacturer generally take[s] precedence."  *In re Nintendo of Am., Inc.*, 756

6

DEFENDANTS WESTERN DIGITAL CORPORATION AND SANDISK CORPORATION'S NOTICE OF
MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMx)

2889982

1    F.3d 1363, 1365 (Fed. Cir. 2014).

2    **IV.    ARGUMENT**

3            The Court should stay this case to avoid two concurrent district court

4    proceedings over the same issues with overlapping parties.  Simply put, Sandisk's

5    DJ Action should take precedence because the Northern District is a more

6    convenient venue.  Specifically at issue in this case are three categories of potential

7    infringement liability: (1) liability for products released by Sandisk and Western

8    Digital (which incorporated Sandisk flash memory) prior to the spin-off of Sandisk;

9    (2) liability for products released by Sandisk after the spin-off; and (3) liability for

10   HDD products, allegedly containing flash memory, released by Western Digital

11   after the spin-off.  As explained below, the infringement allegations in this case

12   target Sandisk's flash memory, and therefore liability in all categories will rise and

13   fall with the determinations made in the Sandisk DJ Action.  Thus, this Court

14   should stay this case while the Sandisk DJ Action proceeds.  Indeed, all the *Lockyer*

15   factors support a stay.  Additionally, the customer-suit exception provides an

16   independently sufficient reason this Court should at least stay this case as to

17   Defendant Western Digital.

18           **A.    A stay in this action will streamline the issues and allow the case to
                     proceed in the more convenient forum.**

19

20           This Court should issue a stay for two reasons under the third *Lockyer* factor:

21   (1) the Sandisk DJ Action will simplify the issues in this case; and (2) a stay will

22   provide efficiencies for the Court and all parties because these issues will be

23   litigated in the more convenient forum.  *See* 398 F.3d at 1110.

24                   **1.    Sandisk's DJ Action will resolve the primary issues in this
                            case.**

25           Because the allegations in this case are targeted at Sandisk's technology,

26   Sandisk's DJ Action will resolve the bulk of, if not all, the claims in this case.

27   Plaintiffs' FAC identifies broadly Defendants' "3D NAND flash memory," as the

28   accused technology.  *See, e.g.*, FAC ¶ 21.  As noted above, Sandisk was, and is, the

                                                7

2889982

party who designs and manufactures flash memory; Western Digital merely acts as
Sandisk's customer. *See* Werder Decl. ¶ 5. Because both cases involve the same
patents, the same accused technologies, and overlapping parties, Sandisk's DJ
Action will resolve the issue of infringement, the primary issue in this case, greatly
streamlining this proceeding. If this case is stayed, Western Digital—the only party
here that is not a party to the Sandisk DJ Action—has agreed to be bound by any
determination of infringement in the Sandisk DJ Action regarding the accused
flash-memory technology, so that issue would not need to be re-litigated. *See*
Werder Decl. ¶ 8. And to the extent any issues related to validity of the Asserted
Patents are litigated in the Sandisk DJ Action, Western Digital has also agreed to be
bound by any determination of patent validity. *See id*. So this issue, too, would
drop out of the instant action. The Sandisk DJ Action could even moot this case
altogether, if Sandisk's technology is found not to infringe the Asserted Patents or
if Plaintiffs' patents are found invalid. Whichever way, the issues in the instant
case will be streamlined.

2.     **Sandisk's DJ Action should be prioritized because the Northern District of California is a more convenient venue.**

Allowing Sandisk's DJ Action to proceed over this case would create other
important efficiencies that this Court should consider in deciding whether to issue a
stay, regardless of which action was first filed. Specifically, courts faced with
determining whether one action should yield to another overlapping action are
instructed to avoid "categorical rules," like the first-filed suit rule, because those
rules "will not always yield the most convenient and suitable forum. Therefore, the
trial court weighing jurisdiction additionally must consider the real underlying
dispute: the convenience and suitability of competing forums." *Micron Tech., Inc.
v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). In conducting this
analysis, courts should look to the convenience factors employed under a Section
1404(a) transfer analysis, including the convenience and availability of witnesses.

8

*Id.* Here, the more convenient forum is plainly the Northern District because it is more convenient for relevant witnesses from Sandisk, Plaintiffs, and third parties. *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981) ("The convenience of witnesses is said to be the most important factor" in determining venue.).

Sandisk, as the party that designs and manufactures the accused flash technology, holds the relevant evidence and employs most of the relevant witnesses. Koh Decl. ¶ 6. Those witnesses and evidence mainly reside in the Northern District of California, *see id.*, where Sandisk has brought its DJ Action, making that venue a more convenient and appropriate one, *see, e.g.*, *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) ("[I]t generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home[.]"). Sandisk's corporate headquarters is in Milpitas, in the Northern District, with around 1,500 employees. Koh Decl. ¶ 4. This Milpitas office is the hub of Sandisk's operations and houses 45% of Sandisk's research and development.[2] *Id.* ¶ 5. Crucially, to the extent the accused technologies—Sandisk's flash memory, and specifically, the transistors and circuits that are part of the silicon wafers in this technology—were designed in the United States (as opposed to abroad), they were designed in the Northern District in Milpitas. *Id.* ¶ 6. Relevant witnesses knowledgeable about the design of the accused technology, *i.e.*, knowledgeable about facts crucial to determining infringement, are thus likely located in Milpitas, along with the relevant product design documents. *Id.*[3] The

---

[2] Notably, Sandisk has at least eleven offices outside the U.S. *See* https://shop.sandisk.com/company/office-locations.

[3] Sandisk's declarant, Anne Koh, is one such employee witness. She is a Senior Director of Engineering and serves as the Chief of Staff to the Senior Vice President of the Flash Products Group at Sandisk, a group that works on the Sandisk flash memory accused in this case. Absent infringement contentions and more specific information about the accused products, it is difficult for Sandisk to

DEFENDANTS WESTERN DIGITAL CORPORATION AND SANDISK CORPORATION'S NOTICE OF
MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMx)

2889982

1   majority of Sandisk's U.S.-based accounting, finance, marketing, and sales teams

2   for its flash technology—persons likely to have evidence related to damages—

3   including those employees in supervisory and executive roles, are located in

4   Milpitas, too. *Id.* ¶¶ 5–6. Although Sandisk has a small office in Irvine, in the

5   Central District, there are fewer than 400 employees there, and none of the design

6   employees work on the accused memory or memory control circuits, instead

7   focusing on product controllers. *Id.* ¶ 4–6. As for non-technical roles, such as

8   sales, there are relatively few individuals when compared to the Milpitas office and

9   other Sandisk offices. *See id.* ¶ 5 (explaining that only around 90 of the about 800

10  Sandisk sales employees are based in the Irvine office). Accordingly, there is

11  unlikely to be relevant evidence or witnesses in the Irvine office. Because "[i]n

12  patent infringement cases, the bulk of the relevant evidence usually comes from the

13  accused infringer[,]" *In re Genentech, Inc.*, 566 F.3d at 1345, the fact that the

14  majority of Sandisk's relevant witnesses and documents are in the Northern District

15  demonstrates that the convenience factor tips greatly in favor of Sandisk's DJ

16  Action.

17       But even further, Plaintiff IPValue has its principal place of business in the

18  Northern District of California, making it necessarily a more convenient venue for

19  Plaintiff as well. *See* FAC ¶ 5 (noting that IPValue's principal place of business is

20  in "Santa Clara, CA"). And Plaintiff LFMS is located in Ireland, so it, too, does not

21  reside in the Central District. *See id.* at ¶ 6.[4] Because both Plaintiffs brought suit

22  outside their home forum, this Court does not need to give substantial deference to

23  Plaintiffs' choice of forum. *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,

24  666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009) ("A plaintiff's choice of forum is

25

26  determine which other employees might be relevant, but there will certainly be
    others.

27  [4] Moreover, LFMS has effectively deputized IPValue in the Northern District by
    providing IPValue with an exclusive license to the Asserted Patents. *See* FAC ¶ 3.

28

10

DEFENDANTS WESTERN DIGITAL CORPORATION AND SANDISK CORPORATION'S NOTICE OF
MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMx)

2889982

entitled to less deference, however, when the plaintiff elects to pursue a case outside its home forum.").

Additionally, certain relevant third-party witnesses are also located in the Northern District.  Plaintiffs allege in the complaint that its patent rights trace back to a company called Cypress Semiconductor Corp., *see* FAC ¶ 2, which itself was based in San Jose, California.[5]  Indeed, two of the five inventors across the Asserted Patents are listed as located in the Northern District; none are in this District.  *See, e.g.*, '365 patent (listing inventors Igor Polishchuk and Krishnaswamy Ramkumar as located in Fremont and San Jose, California, respectively).  These inventors will likely provide important factual testimony on, among other things, issues related to assignment, priority dates, the meaning of certain terminology in the patents, purported improvements over the prior art, and the existence of commercial embodiments, if any.  This evidence bears upon legal issues including claim interpretation, validity, and damages.  For these reasons, it is almost certain that some or all of them would be required to testify at trial, and this Court should consider their locations as relevant to the convenience analysis here.  *Accord In re Google LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023) (listing the location of the inventors as relevant to considering the convenience of witnesses).  Because the majority of likely relevant witnesses reside in the Northern District, principles of comity favor staying this matter while the Sandisk DJ Action proceeds in the Northern District.

### 3.   A stay will prevent conflicting decisions from two district courts.

Lastly, given the overlap in issues, a stay would ensure that the two venues— this Court and the Northern District—do not reach inconsistent verdicts on issues like liability and validity.  *See Ride & Show Eng'g, Inc. v. Walt Disney Parks &*

---

[5] *See, e.g.*, the '664 patent, listing Cypress Semiconductor Corp. as located in San Jose, CA, in the Northern District.

11

DEFENDANTS WESTERN DIGITAL CORPORATION AND SANDISK CORPORATION'S NOTICE OF
MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMx)

2889982

1  *Resorts, L.L.C.*, No. CV 03-6895 GAF (SHx), 2006 WL 8435021, at *7 (C.D. Cal.

2  Jan. 27, 2006) ("[T]he interests in efficiency and avoiding inconsistent judgments

3  weigh strongly in favor of granting the motion here.  Even if portions of the case

4  may be tried in this Court after the [other] proceeding ends, the case will likely be

5  substantially simplified and two courts will not have had to address the same issues

6  in sequence." (internal citation omitted)).  At bottom, a stay will serve "the orderly

7  course of justice measured in terms of the simplifying or complicating of issues,

8  proof, and questions of law[.]"  *Lockyer*, 398 F.3d at 1110.

9         **B.**       **The balance of equities favors a stay.**

10         The first two *Lockyer* factors also favor a stay because IPValue and LFMS

11  will not be harmed by a stay, while Defendant Sandisk (and Plaintiffs) would be

12  harmed by having to litigate the same case across two forums, needlessly expending

13  resources on duplicative efforts.

14         IPValue and LFMS will not be prejudiced by a stay in this case.  As noted,

15  this case is in its early stages such that neither party has yet invested significant

16  resources in litigating this matter.  Courts regularly recognize that early-stage

17  motions like this one reduce any potential prejudice because the parties have not yet

18  expended substantial resources in the case.  *See, e.g.*, *Tissue Anchor Innovations,*

19  *LLC v. Fountain Valley Reg'l Hosp.*, No. SACV 19-00791 JVS (ADSx), 2019 WL

20  8219779, at *4 (C.D. Cal. Nov. 25, 2019).  Further, IPValue and LFMS are not

21  competitors with Western Digital or Sandisk, *see* FAC ¶¶ 2, 3 (explaining that

22  Plaintiffs are in the business of intellectual-property licensing), meaning that any

23  harm they would potentially suffer would be entirely redressable by monetary

24  damages down the line, *see, e.g.*, *PersonalWeb Techs., LLC v. Facebook, Inc.*, No.

25  5:13-CV-01356-EJD, 2014 WL 116340, at *5 (N.D. Cal. Jan. 13, 2014) (in

26  considering a motion to stay pending *inter partes* review, explaining that "any harm

27  from the temporary halt in enforcing Plaintiffs' rights in the asserted patents can be

28  addressed through a final damages award[]" because "the parties are not

12

2889982

competitors"); *see also Document Sec. Sys., Inc. v. Seoul Semiconductor Co.*, No. SACV 17-00981 JVC (JCGx), 2018 WL 10670109, at *3 (C.D. Cal. Mar. 26, 2018).  To the extent IPValue and LFMS contend that they would be prejudiced by a delay in receiving monetary damages from Western Digital, such claims are insufficient to establish the requisite prejudice here.  *Upaid Sys. Ltd. v. CleanDan*, No. SA CV 18-00619-AB (SSx), 2018 WL 5279567, at *2 (C.D. Cal. July 25, 2018) ("[C]ourts have held that there is no likelihood of damage or harm to the non-moving party merely because a stay could cause a delay to the plaintiff in receiving money damages."); *Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*, No. 5:13–cv–05430 EJD, 2014 WL 2759571, at *5 (N.D. Cal. June 17, 2014) ("A delay in compensation for past harms does not equate to a strong showing of prejudice.") (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268-69 (9th Cir. 1962)).  Moreover, any such claim of prejudice would plainly be mitigated by Plaintiffs' ability to assert counterclaims and seek monetary damages from Sandisk in the Sandisk DJ Action during the interim stay of this case.  On the other hand, if a stay is not granted, all parties would be forced to duplicate litigation efforts across two forums, frustrating comity principles.  *See Ride & Show*, 2006 WL 8435021, at *5 ("Accordingly, if the stay is denied, both parties will continue to litigate in two fora, with the accompanying expense, and this is a consideration that the Court may take into account.").  This Court should issue a stay to reduce these potentially wasteful expenditures.

## C.   The customer-suit exception independently supports a stay for Western Digital.

Courts routinely grant stays of patent infringement actions against a customer when there is a parallel proceeding between the patent owner and the manufacturer under "the customer-suit exception."  *See, e.g.*, *In re Nintendo*, 756 F.3d at 1365. This exception can apply even where the customer and the manufacturer have been joined in the same action.  *Tissue Anchor Innovations*, 2019 WL 8219779, at *3

13

DEFENDANTS WESTERN DIGITAL CORPORATION AND SANDISK CORPORATION'S NOTICE OF MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMx)

2889982

(C.D. Cal. Nov. 25, 2019) ("Prior to *Nintendo*, the customer-suit rule was limited to cases where a plaintiff brought suit against a manufacturer and its customers in different actions that were brought in different districts. However, *Nintendo*[] extended the customer-suit rule and its principles to cases where patent infringement is alleged against an infringer and its customers." (internal citations and quotation marks omitted)).

The customer-suit exception as applied in this case provides a basis to stay litigation against Western Digital because it acts only as a customer to Sandisk in the current post-spin-off environment, and "suit[s] by the manufacturer generally take precedence." *Id.* Indeed, "the customer-suit exception to the first-to-file rule . . . exists to avoid, if possible, imposing the burdens of trial on the customer," for it is the manufacturer who is generally "the true defendant" in the dispute. *Id.* "In practice, this means courts will stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum. *Upaid Sys.*, 2018 WL 5279567, at *2 (internal quotation marks omitted). Here, the earlier-filed litigation against Western Digital, now Sandisk's customer, should be stayed while the later-filed DJ case with Sandisk, the manufacturer, proceeds. Sandisk's indemnification of Western Digital for pre-spin-off liability, *see* Werder Decl. ¶ 7; Koh Decl. ¶ 7, provides further support for the prioritization of Sandisk's DJ Action, as Sandisk is the party who holds the interest in litigating the issues here, not Western Digital.

A stay is also particularly warranted where, as here, Western Digital has agreed to be bound by the infringement and potential validity determinations of the Sandisk DJ Action if this case is stayed. *See Upaid Sys.,* 2018 WL 5279567, at *3 ("Additionally, Defendant's representations that it will not contest either infringement or validity of the '[Asserted Patent] if Plaintiff prevails on those issues in the Related Action are significant and weigh in favor of a stay under the customer-suit exception."); *see also Card Activation Techs. v. Pier 1 Imps., Inc.,*

2889982

No. 09 C 2021, 2009 WL 2956926, at *1, 3–5 (N.D. Ill. Sept. 14, 2009) (identifying, as a factor relevant to applying the customer-suit exception, "whether the customer-defendant agrees to be bound by any decision in favor of the patent owner"). In contrast, if a stay is not entered, the two cases will proceed in parallel, which, as explained, risks potentially inconsistent judgments and threatens to waste court and party resources. "Such circumstances present a classic case for a stay." *In re Google*, 588 F. App'x at 990 (explaining that stays are appropriate when "[t]he only potential results of adjudicating these cases in parallel fashion would be the [two] courts agree on the major issues of the litigation, thus producing wasteful and unnecessary litigation, or the courts disagree, thus producing conflicting decisions."). Accordingly, Defendants submit that a stay is necessary to promote judicial efficiency.

Moreover, forcing Western Digital to litigate a case that is ultimately focused on Sandisk's actions would be highly prejudicial. *Seville Classics, Inc. v. Neatfreak Group, Inc.* is instructive on this point. No. CV 15-06237 SJO (ASx), 2016 WL 6661176 (C.D. Cal. Apr. 1, 2016). There, the court severed and stayed a patent infringement suit against two retailers while concurrent litigation against the supplier proceeded. *Id.* at *7. The court reasoned that the case against the supplier should take precedence over any retailer litigation because the retailers were "peripheral" to the substantive infringement liability claims against the supplier and because the supplier agreed to indemnify the retailer with respect to the accused products. *Id.* at *6. So too here—Western Digital is peripheral to this litigation given that Sandisk developed the flash memory. Indeed, Western Digital no longer controls relevant witnesses, who are employed by Sandisk, nor does Western Digital possess most of the relevant documents, because Sandisk has them. *See* Werder Decl. ¶ 6. Further, Sandisk has agreed to indemnify Western Digital, just as the supplier in *Seville Classics* did for its retailer. Therefore, even if this Court declines to stay this action in its entirety, it should at least stay the action as to

15

DEFENDANTS WESTERN DIGITAL CORPORATION AND SANDISK CORPORATION'S NOTICE OF MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMx)

2889982

Defendant Western Digital, pending resolution of any litigation on the Asserted Patents against Sandisk.

## V.    CONCLUSION

For the reasons stated, Defendants Western Digital and Sandisk ask this Court to stay this litigation pending final resolution of Sandisk's DJ Action.


Dated: May 7, 2025                           KEKER, VAN NEST & PETERS LLP


                                    By:  /s/ *Erin E. Meyer*
                                         AJAY S. KRISHNAN
                                         RYAN K. WONG
                                         ERIN E. MEYER
                                         ERIC HANSON
                                         STEPHANIE J. GOLDBERG

                                         Attorneys for Defendants
                                         WESTERN DIGITAL CORPORATION and
                                         SANDISK CORPORATION

DEFENDANTS WESTERN DIGITAL CORPORATION AND SANDISK CORPORATION'S NOTICE OF MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMx)

2889982

## **CERITICATE OF WORD COUNT**

The undersigned hereby certifies that the foregoing document contains 5,021 words, which complies with the word limit of L.R. 11-6.1.

Dated:  May 7, 2025

By:  */s/ Erin E. Meyer*
ERIN E. MEYER

DEFENDANTS WESTERN DIGITAL CORPORATION AND SANDISK CORPORATION'S NOTICE OF
MOTION AND MOTION TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 8:25-CV-00119-MWF (DFMx)

2889982