Brian Ledahl (CA SBN 186579)
bledahl@raklaw.com
Neil A. Rubin (CA SBN 250761)
nrubin@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474

*Attorneys for Plaintiffs IPValue Management, Inc. and Longitude Flash Memory Solutions Ltd.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION – SANTA ANA**

| | |
|---|---|
| IPVALUE MANAGEMENT, INC. and LONGITUDE FLASH MEMORY SOLUTIONS LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>WESTERN DIGITAL CORPORATION and SANDISK CORPORATION,<br><br>Defendants. | Case No. 8:25-CV-00119-MWF (DFMx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY**<br><br>Hon. Michael W. Fitzgerald<br>Courtroom 5A<br><br>Date: June 30, 2025<br>Time: 10:00 am |

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................... 1
II. BACKGROUND .............................................................................................. 2
   A. This First-Filed Patent Infringement Action ........................................... 2
   B. Sandisk's Second-Filed Duplicative Declaratory Judgment Action ...... 3
III. LEGAL STANDARD ..................................................................................... 4
   A. The First-to-File Rule Provides that When Two Cases Presenting Overlapping Issues Are Filed, the Case That Was Filed First Takes Precedence ............................................................................................... 4
   B. The General Standard for Motions to Stay ............................................. 5
IV. ARGUMENT ................................................................................................... 6
   A. Defendants' Motion Is Procedurally Improper and Attempts to Turn the First-to-File Rule on Its Head to Obtain Their Preferred Forum ........... 6
   B. Defendants' Arguments Under the *Lockyer* Factors Are Without Merit and Do Not Meet Their Burden to Show that a Stay Is Warranted ....... 7
   C. The Customer-Suit Exception Is Inapplicable and Does Not Support a Stay ....................................................................................................... 14
V.  CONCLUSION ............................................................................................. 15

# TABLES OF AUTHORITIES

**Cases**

*Cisco Sys., Inc. v. TiVo, Inc.*,
　No. C 12-02766 RS, 2012 WL 3279532 (N.D. Cal. Aug. 10, 2012) ...................... 5

*Covves, LLC v. Dillard's, Inc.*,
　No. 2:18-cv-08518-RGK-AFM, 2019 WL 2022227, (C.D. Cal. Jan. 18, 2019) .. 13

*Futurewei Techs., Inc. v. Acacia Rsch. Corp.*,
　737 F.3d 704 (Fed. Cir. 2013) ..................................................................... 1, 5

*Honda Motor Co. v. Coast Distribution Sys., Inc.*,
　No. C 06-04752JSW, 2007 WL 672521, (N.D. Cal. Feb. 26, 2007) .................... 14

*Int'l Med. Devices, Inc. v. Cornell*,
　No. 20-cv-3503-CBM-(RAOx),
　2021 WL 3415217(C.D. Cal. June 15, 2021) ................................................ 11, 12

*Kahn v. Gen. Motors Corp.*,
　889 F.2d 1078 (Fed. Cir. 1989) ........................................................................ 8, 14

*Katz v. Lear Siegler, Inc.*,
　909 F.2d 1459 (Fed. Cir. 1990) ............................................................................. 13

*Lockyer v. Mirant Corp.*,
　398 F.3d 1098 (9th Cir. 2005) ........................................................................ *passim*

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
　518 F.3d 897 (Fed. Cir. 2008) ........................................................................ 10, 11

*Pinn, Inc. v. Apple, Inc.*,
　No. SA CV 19-01805-DOC-JDE, 2020 WL 6064642 (C.D. Cal. Aug. 27, 2020)
　................................................................................................................................. 13

*Polaris PowerLED Technologies, LLC v. VIZIO, Inc.*,
　No. CV 23-3478-GW-PDx, Dkt. 68 at 4 (C.D. Cal. Jan. 4, 2024) ....................... 13

*Renesas Elecs. Am. Inc. v. Monterey Rsch., LLC*,
　No. 24-CV-06223-JSC, 2024 WL 5077109 (N.D. Cal. Dec. 10, 2024) ........... 5, 10

*Samsung Elecs. Co. v. Blaze Mobile, Inc.*,
　No. 5:21-CV-02989-EJD, 2022 WL 103552 (N.D. Cal. Jan. 11, 2022) ............... 12

*SMIC, Americas v. Innovative Foundry Techs. LLC*,
　473 F. Supp. 3d 1021 (N.D. Cal. 2020) ........................................................ 7, 14

**Statutes**

28 U.S.C. § 1404(a) .............................................................................................. 4, 6

## I. INTRODUCTION

Defendants' motion to stay this case in favor of a narrower declaratory judgment action filed by only Sandisk over a month after this case was filed is without merit and should be denied.

The entire premise of Defendants' motion is that it would be inefficient to litigate two cases concerning the same issues across two forums. IPValue agrees. But under the first-to-file rule, it is the second-filed Sandisk DJ Action that should be stayed, not this first-filed patent infringement action.[1] Indeed, Federal Circuit precedent expressly holds that a second-filed DJ action should be stayed, dismissed, or transferred to the forum of the first-filed infringement action. *Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013).

Defendants do not dispute that this case is the first-filed action, and that the two cases present the same issues. Defendants instead argue that this case should be stayed because the Sandisk DJ Action is more convenient. This fails. To the extent Defendants believe the Northern District of California is a more convenient venue, they should have filed a motion to transfer. They should not be permitted to use an *exception* to the first-to-file rule to avoid their heightened burden under § 1404(a). Defendants' surface-level convenience arguments, which do not even address all of the relevant transfer factors, certainly do not meet that burden and do not warrant departure from the first-to-file rule.

Nor have Defendants shown that Western Digital is merely a "peripheral" reseller within the meaning of the customer suit exception. It is undisputed that Western Digital owned and controlled Sandisk at the time IPValue filed its complaint and through February 2025. And while Sandisk has since separated from Western Digital in a "spin-off" transaction, Western Digital still owns nearly 20% of Sandisk. Defendants' attempt to paint Western Digital—who originally developed the accused

---

[1] Accordingly, IPValue has filed a motion to dismiss, stay, or transfer the Sandisk DJ Action under the first-to-file rule, which is set for hearing on July 31, 2025.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY
CASE NO. 8:25-CV-00119-MWF (DFMx)

products, owned and controlled Sandisk until very recently, and still owns a substantial portion of Sandisk—as a mere reseller is disingenuous.

From an efficiency standpoint, it makes no sense to stay this case in favor of the narrower Sandisk DJ Action, which concerns only a subset of the parties and products at issue in this case. While this case would fully resolve the dispute among *all parties* (IPValue, Sandisk, and Western Digital), the Sandisk DJ Action likely will not fully resolve the dispute with Western Digital and could thus result in multiple serial litigations.

Defendants' motion should be denied.

## II. BACKGROUND

### A. This First-Filed Patent Infringement Action

On January 22, 2025, IPValue Management, Inc. and Longitude Flash Memory Solutions Ltd. (collectively, "IPValue") initiated this patent infringement suit against Western Digital. Dkt. 1. IPValue's complaint alleges that Western Digital infringes the following patents that generally relate to computer memory, computer processors and microcontrollers, and computer display interfaces: United States Patent Nos. 8,633,537 ("'537 patent"), 9,929,240 ("'240 patent"), 11,456,365 ("'365 patent"), 6,963,505 ("'505 patent"), and 7,671,664 ("'664 patent"). *Id.* The complaint identifies the accused products to include Western Digital's "SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory." *Id.* ¶ 19, 35, 49, 64, 76. The complaint also references certain notice letters and pre-suit communications notifying Western Digital of its infringement of IPValue's patents. *Id.* ¶¶ 12–15.

At the time IPValue filed its initial complaint, Sandisk was a wholly-owned subsidiary of Western Digital. Indeed, Sandisk's complaint in the later-filed DJ Action (discussed below) refers to Western Digital as "Sandisk's former corporate parent" and states that during IPValue's and Western Digital's pre-suit licensing discussions, "Sandisk was a wholly owned subsidiary." *Sandisk Corp. v. IPValue*

*Mgmt., Inc. et al.*, No. 5:25-cv-02389-PCP ("Sandisk DJ Action"), Dkt. 1 ¶ 16, 19 (N.D. Cal. Mar. 7, 2025) (attached as Ex. 1). However, in late February 2025, Sandisk separated from Western Digital in a "spin-off" transaction. *See* Ex. 2. Sandisk now owns and operates Western Digital's flash memory business as an independent company, but is still partially owned by Western Digital. *Id.*; Dkt. 15 (Western Digital's Corporate Disclosure Statement); Sandisk DJ Action, Dkt. 4 (Sandisk's Corporate Disclosure Statement). Public records show that Western Digital retained almost 20% of Sandisk shares upon completion of the spin-off. Ex. 3 at 33.

On April 9, 2025, before Western Digital answered, IPValue filed a first amended complaint (FAC) adding Sandisk as a named defendant. Dkt. 24. IPValue's FAC is substantially similar to its original complaint in all other relevant respects—it asserts the same five patents against the same accused products (SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory)—but against both WD and Sandisk. *Id.* ¶¶ 21, 37, 51, 66, 82.

**B.    Sandisk's Second-Filed Duplicative Declaratory Judgment Action**

On March 7, 2025, Sandisk filed a declaratory judgment action against IPValue in the Northern District of California ("NDCal"). *See* Ex. 1. Sandisk's DJ complaint seeks a declaration of non-infringement of the *same five patents* asserted by IPValue against Sandisk and its former parent Western Digital in this case, and with respect to the *same accused products*. Indeed, Sandisk's complaint expressly mentions and refers to this patent infringement action as a purported basis for declaratory judgment jurisdiction. *Id.* ¶¶ 18–19. Sandisk's complaint identifies the same products accused in this case, and further alleges that the "infringing aspects of the products, to the extent they can be deduced from [IPValue's] infringement assertions, appear to be Sandisk technology—not Western Digital technology." *Id.* ¶ 18. In other words, Sandisk essentially admits that IPValue's infringement claims against Western Digital have always implicated Sandisk and its products.

Sandisk also admits that its DJ complaint was filed to preempt IPValue's

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY
CASE NO. 8:25-CV-00119-MWF (DFMx)

1  patent infringement claims against it. Sandisk's complaint references the same notice
2  letters and licensing discussions between IPValue and Western Digital that are
3  discussed in IPValue's complaint. *Id.* ¶ 16. According to Sandisk, these "patent-
4  license negotiations with Western Digital, as well as [IPValue's] existing lawsuit
5  against Sandisk's former corporate parent, make it highly likely that [IPValue] will
6  sue Sandisk for patent infringement of the Declaratory Judgment Patents." *Id.* ¶ 19.
7  But rather than seek to join the already pending lawsuit between IPValue and
8  Western Digital, Sandisk preemptively filed a duplicative DJ action.

9        It is thus clear that there is complete overlap in the issues, as the Sandisk DJ
10 Action involves the same parties, patents, and products as this infringement action.
11 Sandisk also relies on the same communications that serve as the basis for pre-suit
12 notice of infringement in this case, as well as this case itself, as the basis for DJ
13 jurisdiction. Western Digital and Sandisk also admit in their motion to stay that this
14 action was filed first, and admit that "[b]oth this case and the parallel [Sandisk DJ]
15 action involve overlapping parties, the same patents, and the same accused
16 technologies (namely, products containing certain of Sandisk's flash-memory
17 technology)." Mot. at 1. Defendants argue, however, that the second-filed,
18 duplicative Sandisk DJ Action should nonetheless "take priority" over this first-filed
19 infringement action "because the Northern District is the more convenient venue."
20 *Id.* at 2. They have not, however, filed a motion to transfer venue under 28 U.S.C. §
21 1404(a).

22       On May 29, 2025, IPValue filed a motion to dismiss, stay, or transfer the
23 Sandisk DJ Action under the first-to-file rule. Sandisk DJ Action, Dkt. 25. That
24 motion is scheduled for hearing on July 31, 2025.

25 **III. LEGAL STANDARD**

26     **A. The First-to-File Rule Provides that When Two Cases Presenting Overlapping Issues Are Filed, the Case That Was Filed First Takes Precedence**

28       "When two actions that sufficiently overlap are filed in different federal district

courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action." *Renesas Elecs. Am. Inc. v. Monterey Rsch., LLC*, No. 24-CV-06223-JSC, 2024 WL 5077109, at *2 (N.D. Cal. Dec. 10, 2024) (citing *Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013)); *see also Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) ("[W]hen two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action."). "The rule 'exists to avoid conflicting decisions and promote judicial efficiency.'" *Renesas*, 2024 WL 5077109, at *2. And while certain exceptions exist, "there must be sound reason that would make it unjust or inefficient to continue the first-filed action." *Id.* The first-to-file rule "should not be disregarded lightly." *Cisco Sys., Inc. v. TiVo, Inc.*, No. C 12-02766 RS, 2012 WL 3279532, at *3 (N.D. Cal. Aug. 10, 2012).

In determining whether to apply the first-to-file rule, courts consider three factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Renesas*, 2024 WL 5077109, at *2. If these requirements are met, "the court has the discretion to transfer, stay, or dismiss the ***second-filed*** action." *Id.* (emphasis added).

### B. The General Standard for Motions to Stay

In exercising their discretion to manage their dockets and stay proceedings, courts consider the competing interests that will be affected by a stay, including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

## IV. ARGUMENT

Defendants' motion to stay this first-filed case in favor of the second-filed Sandisk DJ Action under the first-to-file rule's convenience exception is procedurally improper. A motion to stay is not an appropriate vehicle for litigating venue issues and Defendants' motion should be denied for this reason alone. In any event, Defendants' arguments regarding the convenience and customer-suit exceptions fail on the merits. Defendants have not met their burden to show that the Sandisk DJ Action is more convenient, or that Western Digital, who owned and controlled Sandisk until February 2025 and still owns nearly 20% of Sandisk, is merely a peripheral reseller.

### A. Defendants' Motion Is Procedurally Improper and Attempts to Turn the First-to-File Rule on Its Head to Obtain Their Preferred Forum

Defendants' argument that this Court "should stay this case to avoid two concurrent district court proceedings over the same issues with overlapping parties" (Mot. at 7) ignores that this is entirely a problem of Defendants' own making. The *only* reason "two concurrent district court proceedings" exist in the first place is because *Sandisk* chose to file a duplicative DJ action in NDCal, rather than seek to join this action. The first-to-file rule exists to prevent this very situation, and provides that *this action* should proceed first because it was filed first.

Defendants do not dispute that this case is the first-filed action and that the Sandisk DJ Action is entirely duplicative of this case. Instead, they request that this Court disregard the first-to-file rule and stay this action "because the Northern District is a more convenient venue." Mot. at 7. This is improper. Defendants cannot use an *exception* to the first-to-file rule to circumvent their heightened burden of proof on a motion to transfer under 28 U.S.C. § 1404(a). As discussed below, Defendants' superficial analysis of the convenience factors in their stay motion certainly does not meet that burden. Indeed, Defendants' attempt to shoehorn convenience arguments into the third *Lockyer* factor regarding simplification of the

issues (Mot. at 8) only underscores the impropriety of the motion. If Defendants believe that the NDCal is a more convenient forum, they should have filed a motion to transfer—not a generalized motion to stay applying the *Lockyer* factors. *See SMIC, Americas v. Innovative Foundry Techs. LLC*, 473 F. Supp. 3d 1021, 1027 (N.D. Cal. 2020) (arguments regarding the appropriate forum are "more suitable in a motion to transfer venue").

Sandisk's assertion that it was "unable to file a motion for transfer in the instant action" because it was not initially named as a party (Mot. at 1) is disingenuous. Sandisk never sought to join this action (IPValue would not have objected to such a request). And even after Sandisk was added to this case, Sandisk and Western Digital still opted to file a motion to stay rather than a motion to transfer.

Allowing Defendants to utilize this limited exception to the first-to-file rule as a vehicle for litigating venue issues would only encourage other defendants to do the same. Rather than file an appropriate motion to transfer under § 1404(a) (and meet the associated burden of showing that another forum is substantially more convenient than this forum), defendants could simply file a duplicative DJ action in their preferred forum, and then move to stay the first-filed infringement action under the first-to-file rule's convenience exception. That is not what the rule was meant for. The first-to-file rule was meant to avoid waste and promote efficiency—not encourage duplication, forum shopping, and gamesmanship. Defendants' motion should be denied for this reason alone.

**B.  Defendants' Arguments Under the *Lockyer* Factors Are Without Merit and Do Not Meet Their Burden to Show that a Stay Is Warranted**

Defendants have failed to show that the *Lockyer* factors support a stay. A stay would not simplify the issues, as the Sandisk DJ Action likely will not fully resolve the issues in this case and would instead require multiple, serial litigations. IPValue would be substantially prejudiced if forced to delay resolution of this case and litigate multiple cases across two forums. Any purported hardship identified by Defendants

is entirely a problem of their own making—Sandisk chose to file a duplicative DJ Action in NDCal rather than join this lawsuit and file an appropriate venue motion.

> **1. Staying this case in favor of the Sandisk DJ Action would not simplify the issues at all, as that case would not fully resolve IPValue's claims against Western Digital.**

Contrary to Defendants' assertions, staying this patent infringement action in favor of Sandisk's narrower DJ action would not simplify the issues. Western Digital is not a party to the Sandisk DJ Action, therefore that case may not fully resolve the dispute between Western Digital and IPValue, including with respect to damages issues. For example, it is not clear that Sandisk is liable for Western Digital's infringing sales before Sandisk was even incorporated, or that it is liable for products that Western Digital continues to sell after the spin-off. Indeed, Defendants expressly acknowledge that staying this case could result in a "delay in receiving monetary damages from Western Digital." Mot. at 13.

The Sandisk DJ Action also may not resolve IPValue's willful infringement claims, since the pre-suit discussions were between IPValue and Western Digital, not Sandisk. *See Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) (explaining that "in those cases in which a customer suit exception has been held to favor the forum of the second-filed action, the second action would *resolve all charges* against the customers in the stayed suit," and that "damages against General Motors can not be assessed in the Illinois court, not only because General Motors is not a party, but because the measure of General Motors' obligation for damages and Motorola's (if any) involve different parameters" (emphasis added)).

Defendants do not even claim that the Sandisk DJ Action would completely dispose of the issues in this case, asserting only that it would resolve "primary issues" such as infringement and validity. Mot. at 7–8. And while it may be true that this case *could* be disposed of *if*, for example, the patents are found invalid in the Sandisk DJ Action, that is entirely speculative. Indeed, validity is not currently at issue in that Action—Sandisk's DJ claims only seek declaratory judgments of non-infringement.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY
CASE NO. 8:25-CV-00119-MWF (DFMx)

8

As such, Western Digital has only agreed to be bound by a determination of patent validity "to the extent any issues related to validity of the Asserted Patents are litigated in the Sandisk DJ Action." Mot. at 8; *see also id.* at 5 ("Western Digital has agreed to be bound by any judgment of infringement or validity (if any) in the Sandisk DJ Action if this case is stayed." (emphasis added)).

On the other hand, this case is guaranteed to resolve *the entire dispute* between IPValue, Sandisk, *and Western Digital*, including with respect to infringement, validity, and damages issues. It would be far more efficient to allow IPValue's claims against both Sandisk and Western Digital—who originally developed the accused products, owned and controlled Sandisk until very recently, and still owns a substantial portion of Sandisk—to proceed at the same time in the same proceeding (this first-filed proceeding), rather than potentially force multiple serial litigations. This would not only ensure that the parties' disputes are fully resolved, but would also facilitate discovery.

### 2. Defendants' convenience arguments have nothing to do with issue simplification and are deficient in any event.

As discussed above, Defendants' arguments regarding the purported convenience of NDCal are improper and do not support a stay. The relative convenience of two forums has nothing to do with simplification of the issues. While a few select witnesses might find travel to the NDCal slightly more convenient, litigating the issues in NDCal as opposed to the Central District will not somehow make determining claim construction, infringement, validity, damages, and other issues simpler or otherwise increase *judicial* efficiency. Not surprisingly, Defendants fail to cite a single case applying the § 1404(a) convenience factors to stay a first-filed patent infringement action in favor of a second-filed duplicative DJ action. Federal Circuit precedent expressly counsels against this, holding that "the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action." *Renesas*, 2024 WL 5077109, at

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY
CASE NO. 8:25-CV-00119-MWF (DFMx)

9

*2 (citing *Futurewei*, 737 F.3d at 708).

The *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008) case cited by Defendants is inapposite. That case concerned a district court's decision to exercise declaratory judgment jurisdiction, which is *discretionary*. The Federal Circuit explained that when "faced with reaching a jurisdictional decision about a declaratory judgment action with an impending infringement action either filed or on the near horizon," district courts need not automatically favor the first-filed action, and should also weigh other factors such as the "convenience and suitability of competing forums." *Id.* at 903–04. The Federal Circuit further noted that district courts may also "consider a party's intention to preempt another's infringement suit when ruling on the dismissal of a declaratory action." *Id.* at 904. And while the Federal Circuit ultimately found that the district should have exercised jurisdiction over the DJ case, it did *not* hold that the infringement action should be stayed. *Id.* at 905.

Unlike *Micron*, this case is not a DJ action, and this Court's exercise of jurisdiction is therefore not discretionary. Further, in *Micron*, "the two actions were filed almost simultaneously" (one day apart), and the cases did not present identical issues—there were six patents in the DJ action that were not asserted in the infringement action. *Id.* at 900, 904. Accordingly, it made far less sense to defer the DJ action in favor of the infringement action. But here, this patent infringement case was filed over a month before the Sandisk DJ Action, and there is no dispute that this action covers all of the issues in the Sandisk DJ Action.

In any event, if the Court is inclined to weigh the relative convenience of the two forums, Defendants' superficial analysis of the § 1404(a) factors fails to establish that the NDCal is a more convenient forum. For instance, for the "most important factor in determining venue," Sandisk only specifically identified *one* relevant witness in its motion to stay because it was purportedly too "difficult for Sandisk to determine which other employees might be relevant." Mot. at 9–10 n.3. This falls far

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY
CASE NO. 8:25-CV-00119-MWF (DFMx)

10

short of Defendants' burden, as "the Court must consider the importance of the witnesses, and not simply the number and location of witnesses for each party." *Int'l Med. Devices, Inc. v. Cornell*, No. 20-cv-3503-CBM-(RAOx), 2021 WL 3415217, at *2 (C.D. Cal. June 15, 2021). "The moving party must identify the key witnesses to be called and present a generalized statement of what their testimony would include." *Id.* Defendants have not done so. Nor have Defendants identified any non-electronic sources of proof, or presented any evidence for other convenience factors such as court congestion or the difference in litigation costs. *See id.* at *1–3. Sandisk also admits that it has an office in Irvine (which it apparently shares with Western Digital), further undermining the purported inconvenience of this forum. *See* Mot. at 4, 10.

Defendants' arguments would not pass muster on a § 1404(a) motion to transfer, and they certainly are not sufficient to warrant departing from the first-to-file rule to stay this case (which would effectively transfer a significant portion of the dispute to the NDCal). And to the extent that convenience may marginally favor the NDCal, these considerations are negated by the clear anticipatory nature of Sandisk's DJ Action. *See Micron*, 518 F.3d at 904 (district courts may consider the "intention to preempt another's infringement suit"). Sandisk's DJ complaint expressly admits that it was aware IPValue would seek to sue Sandisk for patent infringement after the spin-off, since the accused Western Digital products use Sandisk technology. Ex. 1 ¶ 19. But rather than seek to join this case, Sandisk raced to the courthouse to preempt IPValue's impending suit against it in order to secure Sandisk's (and presumably Western Digital's) preferred forum. This strongly weighs against the requested stay.

### 3. The first-to-file rule provides that this case should be given priority, and the second-filed Sandisk DJ Action should be stayed to avoid conflicting decisions.

Defendants' assertion that "given the overlap in issues, a stay would ensure that the two venues … do not reach inconsistent verdicts on issues" (Mot. at 11) fails for the reasons discussed above. This is entirely a problem of Sandisk's own making, as Sandisk elected to file a duplicative lawsuit in NDCal. Defendants are correct,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY
CASE NO. 8:25-CV-00119-MWF (DFMx)

however, that a stay is in order. But it is the second-filed Sandisk DJ Action that should be stayed, dismissed, or transferred, not this first-filed case—which, unlike the Sandisk DJ Action, will dispose of the entire dispute among the parties.

### 4. The first two *Lockyer* factors strongly weigh against the requested stay.

The first two *Lockyer* factors (the prejudice that may result from granting a stay, and the hardship or inequity which the movant may suffer if required to go forward) also weigh against the requested stay. As to the first factor, Defendants' assertion that IPValue will not be prejudiced by the requested stay is wrong. Defendants are not merely seeking a stay of litigation. They are attempting to split this dispute between two cases in two separate districts, and have only certain issues decided as against Sandisk only first, in Defendants' preferred forum (without meeting the requisite burden of proof for transferring venue), presumably to gain a strategic advantage. This would substantially prejudice IPValue by (1) depriving plaintiffs of their choice of forum, which should be given "great weight," *Int'l Med. Devices*, 2021 WL 3415217, at *2; (2) forcing IPValue to litigate two cases serially in two separate forums, substantially increasing their litigation costs and prolonging resolution of this dispute; and (3) delaying recovery of monetary damages at least as to Western Digital, as Defendants squarely acknowledge (Mot. at 13).

That IPValue does not compete with Defendants and seeks monetary damages is not a free pass for Defendants to game the system and burden IPValue (and the courts) in this manner. IPValue has an "interest in the timely enforcement of its patent rights," even as a non-competitor. *See Samsung Elecs. Co. v. Blaze Mobile, Inc.*, No. 5:21-CV-02989-EJD, 2022 WL 103552, at *4 (N.D. Cal. Jan. 11, 2022); *see also Pinn, Inc. v. Apple, Inc.*, No. SA CV 19-01805-DOC-JDE, 2020 WL 6064642, at *2 (C.D. Cal. Aug. 27, 2020) (finding the delay resulting from a stay would be "especially prejudicial to Plaintiff" even though "Plaintiff does not compete with Defendant and seeks only money damages"); *Polaris PowerLED Technologies, LLC*

*v. VIZIO, Inc.*, No. CV 23-3478-GW-PDx, Dkt. 68 at 4 (C.D. Cal. Jan. 4, 2024) (plaintiff's status as "a non-competitor, non-practicing entity seeking damages" does not negate prejudice that would result from a "lengthy delay in this proceeding that could jeopardize evidence and the Court's ability to manage its docket in the interests of justice"); *Covves, LLC v. Dillard's, Inc.*, No. 2:18-cv-08518-RGK-AFM, 2019 WL 2022227, at *2, *4 (C.D. Cal. Jan. 18, 2019) (noting that "[t]he public policy favoring expeditious resolution of disputes is of particular weight when dealing with wasting assets such as patents," and that plaintiff thus has a "strong interest in the expeditious resolution of this action") (citing *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463–64 (Fed. Cir. 1990)).

Furthermore, "if this litigation is postponed for potentially years, it will become more difficult [for IPValue] to prove its case, as 'witnesses may become [un]available, their memories may fade, and evidence may be lost." *Pinn*, 2020 WL 6064642, at *2. The "increased difficulty of proving its case after the stay is lifted will be especially prejudicial" to IPValue and further weighs against a stay. *Id.*

As to the second factor, Defendants have failed to identify a cognizable claim of hardship that would result if this case goes forward. The only purported hardship Defendants can point to is "litigat[ing] the same case across two forums." Mot. at 12. But again, this is a problem created by Sandisk and can easily be solved by applying the first-to-file rule to stay the Sandisk DJ Action. This would benefit *all* parties because this case is guaranteed to resolve the entire dispute, whereas allowing the Sandisk DJ Action to proceed will likely result in serial, duplicative litigation. In any event, Ninth Circuit law holds that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112; *Am. Honda Motor Co. v. Coast Distribution Sys., Inc.*, No. C 06-04752JSW, 2007 WL 672521, at *2 (N.D. Cal. Feb. 26, 2007) ("[T]he hardship attendant with being forced to defend a lawsuit is irrelevant when considering whether to grant a stay.").

### C. The Customer-Suit Exception Is Inapplicable and Does Not Support a Stay

"The customer-suit exception applies in patent litigation where the earlier action is an infringement suit against a manufacturer's customers, and the later suit is a declaratory judgment action brought by the manufacturer of the accused products." *SMIC*, 473 F. Supp. 3d at 1027. Sandisk asserts that this exception applies because, after the spinoff, Western Digital is "now Sandisk's customer." Mot. at 14. Even if true, this fails. Western Digital was not a mere reseller at the time IPValue filed its complaint, but was Sandisk's *corporate parent* through February 2025. Indeed, prior to February 5, 2024, Sandisk did not even exist. Ex. 4. Therefore, Western Digital was effectively the "manufacturer" for *all accused infringing activity through February 2025*, and IPValue properly initiated suit against Western Digital as the party with the "greater interest in defending its actions against charges of patent infringement." *Kahn*, 889 F.2d at 1081. Western Digital is clearly not "peripheral." And even if it is arguably "peripheral" now (it is not given its ownership interest in Sandisk), it certainly was not for virtually the entire damages period at issue in this case.

When it became clear that Sandisk formally separated from Western Digital and took over Western Digital's flash memory business, IPValue amended its complaint as of right to add Sandisk as a defendant. There is thus no need to apply the customer-suit exception here, as this first-filed case will resolve the issues against *both* "manufacturer" and "customer" for all infringing activity that occurred before and after the spin-off. The Sandisk DJ Action, on the other hand, may not fully resolve the dispute between Western Digital and IPValue, including with respect to damages and willful infringement. *See Kahn*, 889 F.2d at 1081 (explaining that "in those cases in which a customer suit exception has been held to favor the forum of the second-filed action, the second action would resolve all charges against the customers in the stayed suit," and that "damages against General Motors can not be assessed in the Illinois court, not only because General Motors is not a party, but

because the measure of General Motors' obligation for damages and Motorola's (if any) involve different parameters").

That Sandisk has agreed to indemnify Western Digital "for pre-spin-off liability" (Mot. at 14) is inconsequential. Sandisk did not actually produce the "indemnification" agreement, but instead submitted a declaration from a Western Digital employee vaguely stating: "I understand that Sandisk has agreed to accept liability for this action as it relates to Western Digital's flash-memory products that were released under both the Western Digital and Sandisk brands when Sandisk was a subsidiary of Western Digital." Dkt. 32-1 (Declaration of Karin Werder) ¶ 7. Without the actual agreement, neither IPValue nor the Court can determine the scope of Sandisk's purported indemnification. Moreover, the foregoing statement indicates that the alleged "indemnification" is extremely limited. The Sandisk entity that is a party to this lawsuit was not even incorporated until February 5, 2024, and thus was not "a subsidiary of Western Digital" prior to that date. *See* Ex. 4.

In any event, it would be far more efficient to proceed against both Sandisk and Western Digital, who owned and controlled Sandisk until very recently, at the same time in the same proceeding, rather than potentially force multiple serial litigations. There is simply no good reason to disregard the first-to-file rule here.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to stay should be denied.

Dated: June 9, 2025

Respectfully submitted,

/s/ *Brian Ledahl*
Brian Ledahl (CA SBN 186579)
bledahl@raklaw.com
Neil A. Rubin (CA SBN 250761)
nrubin@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474

***Attorneys for Plaintiffs IPValue Management, Inc. and Longitude Flash Memory Solutions, LLC***

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY
CASE NO. 8:25-CV-00119-MWF (DFMx)

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 5,035 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 9, 2025                         /s/ *Brian Ledahl*
                                            Brian Ledahl