Brian Ledahl (CA SBN 186579)
bledahl@raklaw.com
Neil A. Rubin (CA SBN 250761)
nrubin@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474

*Attorneys for Plaintiffs IPValue Management, Inc. and Longitude Flash Memory Solutions Ltd.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| IPVALUE MANAGEMENT, INC. and LONGITUDE FLASH MEMORY SOLUTIONS LTD., | Case No. 8:25-CV-00119-MWF (DFMx) |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| v. | Hon. Michael W. Fitzgerald Courtroom 5A |
| WESTERN DIGITAL CORPORATION and SANDISK CORPORATION, | Date: June 30, 2025 Time: 10:00 am |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

    A.    Plaintiffs' Patent Infringement Complaint ................................................ 2

    B.    Sandisk's Duplicative Declaratory Judgment Action in NDCal
        Concerning the Same Patents and Products ............................................... 3

III.   LEGAL STANDARD .......................................................................................... 4

IV.    ARGUMENT ...................................................................................................... 5

    A.    The Allegations of the FAC Are Sufficient to Put Defendants on Notice
        of What Activity Is Being Accused of Infringement ............................... 5

    B.    Because Plaintiffs Have Sufficiently Plead Direct Infringement,
        Defendants' Motion to Dismiss the Induced, Contributory, and Willful
        Infringement Claims Necessarily Fails .................................................. 21

    C.    In the Event the Court Finds Any Claim Deficient, Plaintiffs Should Be
        Given Leave to Amend ........................................................................... 21

V.     CONCLUSION .................................................................................................. 22

1

## TABLE  OF AUTHORITIES

2

**Cases**

3

*AlexSam, Inc. v. Aetna, Inc.*,
   119 F.4th 27 (Fed. Cir. 2024) ....................................................... 4

4

*Avago Techs. Gen. IP (Singapore) PTE Ltd. v. Asustek Computer, Inc.*,

5

   No. 15-CV-04525-EMC, 2016 WL 1623920 (N.D. Cal. Apr. 25, 2016) ............. 12

6

*Bell Atl. Corp. v. Twombly*,

7

   550 U.S. 544 (2007) ................................................................ 4

8

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) ................................................. 5, 11

9

*Chapterhouse, LLC v. Shopify, Inc.*,

10

   No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) ........... 13

11

*Cortez v. AAA Life Ins. Co.*,
   No. 2:24-CV-04980-MCS-RAO, 2024 WL 5689109 (C.D. Cal. Aug. 21, 2024) 21

12

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,

13

   888 F.3d 1256 (Fed. Cir. 2018) .................................................. 9

14

*Flying Heliball, LLC v. Zero Zero Robotics, Inc.*,
   No. 8:24-CV-01838-FWS-JDE, 2025 WL 1090962(C.D. Cal. Feb. 27, 2025) .... 11

15

*Foman v. Davis*,

16

   371 U.S. 178 (1962) .............................................................. 21

17

*Helprin v. Harcourt, Inc.*,

18

   277 F. Supp. 2d 327 (S.D.N.Y. 2003) ............................................ 19

19

*Hoang v. Bank of Am., N.A.*,
   910 F.3d 1096 (9th Cir. 2018) .................................................. 21

20

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,

21

   681 F.3d 1323 (Fed. Cir. 2012) .......................................... 4, 10, 20

22

*IPCOMM, LLC v. Grp. Rossignol USA, Inc.*,
   No. 20-CV-272-BAS-RBB, 2020 WL 4201669 (S.D. Cal. July 22, 2020) ......... 12

23

*Kolon Indus., Inc. v. Hyosung Advanced Materials Corp.*,

24

   No. SA CV 24-00415 JVS-JDE, 2024 WL 3915072 (C.D. Cal. July 26, 2024) . 11,

25

   16, 22

26

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
   869 F.3d 1372 (Fed. Cir. 2017) .................................................. 1

27

28

*N. Star Innovations, Inc. v. Etron Tech. Am. Inc.*,
    No. CV 8:16–00599 SJO (FFMxx), 2016 WL 9046909 (C.D. Cal. Sept. 21, 2016)
    .................................................................................................................. 13

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018) ................................................................... 4

*Neutrik AG v. ADJ Prods., LLC*,
    No. LA CV19-09937 JAK (AGRx), 2020 WL 6128066(C.D. Cal. May 6, 2020)
    .................................................................................................................. 12

*Pensmore Reinforcement Techs., LLC v. Cornerstone Mfg. & Distribution, Inc.*,
    609 F. Supp. 3d 1092 (C.D. Cal. 2022) ..................................................... 18

*SATA GmbH & Co. KG v. Qingdao Hanspray New Material Tech. Co.*,
    696 F. Supp. 3d 954 (D. Nev. 2023) ........................................................... 12

*Sleep No. Corp. v. Sizewise Rentals, LLC*,
    No. ED CV 18-00356-AB (SPx), 2018 WL 5263065(C.D. Cal. June 26, 2018) . 12

**Statutes**

28 U.S.C. § 1404(a) ...................................................................................... 4

**Rules**

Fed. R. Civ. P. 15(a)(2) ............................................................................... 21

# I.    INTRODUCTION

The Federal Circuit has repeatedly held that a plaintiff need not prove its case at the pleading stage. Rather, a patent infringement complaint need only place the alleged infringer on notice of what activity is being accused of infringement. IPValue's complaint easily meets this standard. Each count identifies the accused products, identifies an exemplary patent claim that is infringed by the accused products, and provides supporting evidence showing that the critical elements of the claims are met. These allegations, accepted as true and drawing all reasonable inferences in favor of IPValue, plausibly allege claims for patent infringement.

Critically, Defendants do not assert that they do not understand what is being accused here. Nor would such an assertion be credible given that, as alleged in the complaint, IPValue and Western Digital have been discussing IPValue's infringement claims since 2021. Indeed, Sandisk filed a declaratory judgment action against IPValue based on the very claims asserted in this case.[1] Defendants' motion instead largely rests on technicalities, such as IPValue's use of the same image to support multiple limitations (despite that the images at issue depict multiple limitations and are labeled accordingly), IPValue's reliance on public information rather than technical manuals (that are exclusively in Defendants' possession), and IPValue's purported failure to explain how the images in the complaint were obtained. But none of this renders the complaint deficient.

Defendants' motion ultimately boils down to a demand for detailed infringement contentions in the complaint. But as the Federal Circuit has repeatedly held, this demands "too much" at this stage of the proceedings. *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017). IPValue will provide more detailed infringement contentions in accordance with the schedule to be set by the Court. Defendants' motion to dismiss should be denied.

---

[1] IPValue has filed a motion to dismiss, transfer, or stay Sandisk's DJ action under the first-to-file rule.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 8:25-CV-00119-MWF (DFMx)

## II. BACKGROUND

### A. Plaintiffs' Patent Infringement Complaint

On January 22, 2025, IPValue Management, Inc. and Longitude Flash Memory Solutions Ltd. (collectively, "IPValue") initiated this patent infringement suit against Western Digital. Dkt. 1. IPValue's initial complaint did not name Sandisk as a defendant because Sandisk was a wholly-owned subsidiary of Western Digital at the time it was filed. However, in late February 2025, Sandisk separated from Western Digital in a "spin-off" transaction. Sandisk now owns and operates Western Digital's flash memory business as an independent company, but is still partially owned by Western Digital. *See* Dkt. 15 (Western Digital's Corporate Disclosure Statement).

On April 9, 2025, before Western Digital responded, IPValue filed a first amended complaint (FAC) adding Sandisk as a named defendant. Dkt. 24. The FAC alleges that Defendants infringe the following patents that generally relate to computer flash memory and storage devices: United States Patent Nos. 8,633,537 ("'537 patent"), 9,929,240 ("'240 patent"), 11,456,365 ("'365 patent"), 6,963,505 ("'505 patent"), and 7,671,664 ("'664 patent"). *Id.* The complaint identifies the accused products to include Defendants' "SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory." *Id.* ¶ 19, 35, 49, 64, 76.

The FAC also references certain notice letters and pre-suit communications notifying Western Digital of its infringement of IPValue's patents. *Id.* ¶¶ 12–15. As alleged in the FAC, "[i]n each letter, IPValue specifically identified Western Digital's products using 3D NAND Flash memory as exemplary infringing products." *Id.* ¶ 13. "IPValue also conducted multiple in-person and video meetings with Western Digital," during which "IPValue provided Western Digital with detailed evidence" of infringement. *Id.* ¶ 14.

Each patent infringement count identifies the accused products at issue,

specifically identifies an exemplary claim that is infringed by the accused products, and explains how each element of that exemplary claim is met. The complaint also contains exemplary images from analyses performed by the well-known reverse-engineering firm TechInsights, excerpts from a paper co-authored by employees of Defendants, and other evidence further supporting that the claim limitations are met.

**B.  Sandisk's Duplicative Declaratory Judgment Action in NDCal Concerning the Same Patents and Products**

On March 7, 2025, Sandisk filed a declaratory judgment action against IPValue in the Northern District of California. *Sandisk Corp. v. IPValue Mgmt., Inc. et al.*, No. 5:25-cv-02389-PCP ("Sandisk DJ Action"), Dkt. 1 (N.D. Cal. Mar. 7, 2025). Sandisk's DJ complaint seeks a declaration of non-infringement of the same five patents asserted by IPValue against Sandisk and its former parent Western Digital in this case, and with respect to the same accused products. Indeed, Sandisk's complaint expressly mentions and refers to this patent infringement action as a purported basis for declaratory judgment jurisdiction. *Id.* ¶¶ 18–19. Sandisk's DJ complaint identifies the same products accused in this case, and further alleges that the "infringing aspects of the products … appear to be Sandisk technology—not Western Digital technology." *Id.* ¶ 18.

Sandisk also admits that its DJ complaint was filed to preempt IPValue's patent infringement claims against it. Sandisk's complaint references the same notice letters and licensing discussions between IPValue and Western Digital that are discussed in IPValue's complaint. *Id.* ¶ 16. According to Sandisk, these "patent-license negotiations with Western Digital, as well as [IPValue's] existing lawsuit against Sandisk's former corporate parent, make it highly likely that [IPValue] will sue Sandisk for patent infringement of the Declaratory Judgment Patents." *Id.* ¶ 19. But rather than seek to join this already-pending lawsuit, Sandisk preemptively filed a duplicative DJ action.

Defendants have now moved to dismiss this case, and have also filed a motion

to stay this case (Dkt. 32) in favor of the Sandisk's second-filed, duplicative DJ action. According to Defendants, the Northern District is "the more convenient venue." *Id.* at 2. They have not, however, filed a motion to transfer venue under 28 U.S.C. § 1404(a).

IPValue opposed Defendants' motion to stay on the ground that this first-filed action should take precedence over the narrower Sandisk DJ Action, which likely will not fully resolve IPValue's claims against non-party Western Digital. Dkt. 36. As explained in the stay opposition, Sandisk's filing of a duplicative lawsuit and Defendants' subsequent motion to stay this lawsuit constitute an improper attempt to circumvent their heightened burden of proof under § 1404(a) in order to gain their preferred forum. IPValue filed a motion to dismiss, stay, or transfer the Sandisk DJ Action under the first-to-file rule, which is set for hearing on July 31, 2025. Sandisk DJ Action, Dkt. 25.

## III.  LEGAL STANDARD

"The purpose of a motion to dismiss is to *test the sufficiency of the complaint, not to decide the merits*." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (emphasis in original).[2] "The plausibility standard does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence to support the plaintiff's allegations." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The Federal Circuit has repeatedly held that a plaintiff "need not prove its case at the pleading stage." *Id.* (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)); *see also AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024). Nor is a plaintiff "required to plead infringement on an element-by-element basis." *AlexSam*, 119 F.4th at 35. Rather, "it is enough that a complaint place the alleged infringer on notice of what activity is being accused of infringement." *Id.*

---

[2] All quotations herein have been cleaned up.

"[B]ecause a complaint need only give the defendant fair notice of what the claim is and the grounds upon which it rests, it follows that specific facts are not necessary to support every allegation in the complaint." *Id.* at 39. "The level of detail required in any given patent case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* In deciding a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to" the plaintiff. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) (applying Ninth Circuit law).

## IV.  ARGUMENT

The allegations of the FAC are more than sufficient to put Defendants on notice of what activity is being accused of infringement, which is all that is required at this stage. IPValue will provide more detailed infringement contentions in accordance with the schedule set by the Court. But in the event the Court finds any of the claims are deficient, IPValue should be given leave to amend.

### A.  The Allegations of the FAC Are Sufficient to Put Defendants on Notice of What Activity Is Being Accused of Infringement

#### 1.  The FAC Plausibly Alleges Infringement of the Polischuk Patents

Defendants' arguments regarding purported deficiencies in the claims regarding direct infringement of the Polischuk patents (the '537, '240, and '365 patents) lack merit. While it is true that a patent infringement complaint cannot simply recite the claim elements and conclude that the accused product has those elements, that is not what IPValue's complaint does here. Each count identifies a specific exemplary claim, describes how each element of that claim is met, and supports those allegations with images from TechInsights reverse engineering showing that those elements are met.

For example, Count I alleges that the accused products "infringe claim 17 of

the '537 Patent" because the accused products "include 'a semiconductor device' comprising 'a memory transistor.'" FAC ¶¶ 26–27. The complaint then provides a scanning electron microscope (SEM) photo of said memory transistor taken from a reverse-engineering report. *Id.* ¶ 27. The complaint then alleges that the memory transistor includes a polysilicon "vertical channel" that connects a "first diffusion region" to a "second diffusion region," and provides two transmission electron microscope (TEM) photos from a reverse-engineering report depicting a cross-section of a set of transistors, showing their vertical channels and the diffusion regions. *Id.* ¶ 28.

The complaint then alleges that "the memory transistor includes 'an oxide-nitride-nitride-oxide (ONNO) stack disposed about the vertical channel,'" and that this ONNO stack includes "a **tunnel** dielectric layer abutting the vertical **channel**"; "a multi-layer **charge-trapping** region"; and "a **blocking** dielectric layer overlying the multi-layer charge-trapping region." *Id.* ¶¶ 29–32 (emphases added). These allegations are supported with the following TEM image from a reverse-engineering analysis of a Western Digital SA530 SSD (as noted in the image caption), which provides a different cross-section of the transistor structure and which clearly labels each claimed layer of the ONNO stack (**blocking** oxide layer, **charge-trapping** layer, and **tunnel** oxide layer abutting the vertical **channel**).



Throughout their motion, Defendants complain that the complaint repeats the same image for multiple limitations. But in this case it was entirely reasonable to do so given that this single image shows each of the different layers of the same ONNO stack. Defendants also complain that the complaint provides no explanation of "where the various colored rings on the image (and their corresponding labels) came from." Dkt. 33 at 11. One familiar with TEM images would recognize that the colors and the labels were added to a black-and-white TEM image in order to assist the reader in understanding what structures in the image were being pointed to as corresponding to the claimed features. Prior to adding the colors to the rings, the TEM image appeared like this:



The ring structure alleged in the complaint is readily apparent from this TEM image. The allegations in the complaint concerning the chemical composition of these layers must be accepted as true for the purposes of this motion. They are also made based upon visible features in the TEM images, additional analyses of chemical composition that were performed prior to filing the complaint, and knowledge of experts in the relevant fields. If the Court determines that IPValue's existing allegations are insufficient, it should at the very least be granted leave to amend to add these additional factual details.

Finally, Count I alleges that "the memory transistor includes 'a high work function gate electrode disposed about the [ONNO] stack, abutting the blocking dielectric layer.'" *Id.* ¶ 33. This limitation is supported with a TEM photo from TechInsights showing gate electrodes made of tungsten (W), a high work function material. *Id.*

Similarly, Count II provides allegations that the accused products infringe at least claim 12 of the '240 patent and include a "semiconductor device" including a "memory device," which in turn includes "a gate structure including a first high work

function gate electrode"; "a channel positioned between and electrically connecting a first diffusion region and a second diffusion region"; and "a tunnel dielectric layer, a multi-layer charge trapping layer, and a blocking dielectric layer . . . ." *Id.* ¶¶ 42–46. The complaint further alleges that the memory device includes "a metal oxide semiconductor (MOS) logic device including a gate oxide layer and a second high work function gate electrode." *Id.* ¶ 47; *see also id.* ¶¶ 56–62 (describing how the accused products meet claim 35 of the '365 patent, which similarly recites a semiconductor comprising a memory device with a gate structure, a vertical channel, a tunnel layer, charge trapping layer, a blocking layer, and a MOS logic device).

As noted by Defendants, the Polischuk patents are related and share the same specification. Thus, Counts II and III rely on the same reverse-engineering images as Count I, including the above image showing the different layers in the memory device.

These allegations are more than sufficient to put Defendants on notice of what activity is accused of infringement. And while the technology at issue is perhaps more complex than, say, a simple medical device like the spinal brace at issue in *Disc Disease* (and accordingly provides more detail than was found sufficient in that case)[3], this technology is not so complex as to require the level of detail Defendants seem to be requesting. Critically, Defendants *do not* assert that they do not understand what is being accused here. Nor would such an assertion be remotely credible given that IPValue and Western Digital have engaged in numerous discussions and meetings (both in person and via video) regarding IPValue's infringement claims since 2021. FAC ¶¶ 13–17. Indeed, Sandisk apparently understood IPValue's claims well enough to know that they implicate Sandisk technology and filed a DJ action

---

[3] *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (finding the plaintiff sufficiently pled an infringement claim by specifically identifying three accused products, attaching photos of the accused products to the complaint, and generally alleging that the accused products met "each and every element of at least one claim of the [ ] patent either literally or equivalently").

against IPValue seeking declaratory judgments of non-infringement with respect to the same patents and products.

Defendants' primary complaint is that the above image on page 7 is used "nine times for different claim elements," and that the complaint "provides no explanation of what the image is, how it was created or obtained, or most importantly, where the various colored rings on the image (and their corresponding labels) came from." Mot. at 11. These arguments fail.

As noted above, the image at issue depicts multiple limitations (e.g., the claimed ONNO stack and the different layers (**blocking** oxide layer, **charge-trapping** layer, and **tunnel** oxide layer) within that stack), which is why this clearly-labeled image is used multiple times. Not surprisingly, Defendants cite no authority supporting any categorical rule prohibiting use of the same image to support multiple limitations. In fact, limitation-by-limitation analysis *and evidence* is not required at the pleading stage at all. *See Nalco*, 883 F.3d at 1350; *Bill of Lading*, 681 F.3d at 1335.

Defendants' assertion that the complaint does not explain "what the image is" is directly contradicted by its own assertion correctly recognizing that it "appears to be a transmission electron microscopy (TEM) image of a Western Digital product **(according to the label)**." Mot. at 11 (emphasis added). If the Court would prefer that IPValue amend its complaint to expressly state that this is a TEM image taken from a Western Digital SA530 SSD, as the label on the image already states—and/or provide further description regarding what the other images depict—IPValue is more than happy to do so. But Defendants cannot credibly claim they are not on notice of what the image is or represents. Defendants' suggestion that the complaint is deficient because it does not explain how the image was "created or obtained" or where the labels came from is entirely without merit. Defendants are essentially requesting expert report levels of detail in the complaint. No authority supports that a patent infringement complaint is required to include evidence at all, much less

1    prove that such evidence is reliable and admissible.[4]

2    Defendants' reliance in *Bot M8* is misplaced. In that case, the Federal Circuit

3    found the claim for one patent was insufficiently plead because the FAC contained

4    "*too much* rather than too little, to the point that Bot M8 has essentially pleaded itself

5    out of court." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021).

6    The plaintiff's "'kitchen sink' approach to pleading" revealed an "inconsistency" that

7    rendered the claim "not even possible, much less plausible." *Id.* For another patent,

8    the complaint pointed to four different storage components as satisfying the claim's

9    "the mutual authentication limitation," but did not allege any facts supporting that

10    they stored the gaming information and mutual authentication program *together*, as

11    required by the claims. *Id.* at 1354–55.

12    This case is distinguishable, as IPValue's FAC provides evidence supporting

13    that the "critical elements" of the claims are present in the accused products, and does

14    not plead any facts rendering infringement impossible. *See Flying Heliball, LLC v.*

15    *Zero Zero Robotics, Inc.*, No. 8:24-CV-01838-FWS-JDE, 2025 WL 1090962, at *4

16    (C.D. Cal. Feb. 27, 2025) ("As the Federal Circuit did in *Bot M8*, the court begins by

17    identifying 'the critical elements' of the [asserted patents]" and then considers

18    whether the complaint provides factual allegations to "adequately notify Defendants

19    of which 'activity is being accused of infringement.'"). Thus, IPValue's FAC is more

20    analogous to the claims in *Bot M8* that were not dismissed. For the '988 and '670

21    patents, the Federal Circuit rejected Sony's argument that the allegations were

22    "conclusory and track the claim language too closely," as the FAC identified specific

23    error codes plausibly demonstrating that the claimed fault code inspection was met.

24    *Bot M8*, 4 F.4th at 1356. The Federal Circuit found that "Sony—like the district

25    court—demands too much at this stage of the proceedings." *Id.* The plaintiff plead

26    ―――――――――――――――

27    [4] Further, in the *Kolon Industries* case cited by Defendants (discussed below), the
     Court made "clear" that a plaintiff is *not required* "to disclose where it obtained the

28    depicted product" photos. *Kolon Indus., Inc. v. Hyosung Advanced Materials Corp.*,
     No. SA CV 24-00415 JVS-JDE, 2024 WL 3915072, at *5 (C.D. Cal. July 26, 2024).

sufficient facts to support that the critical elements of the claims were met, and was not required to prove up every limitation because a plaintiff "need not prove its case at the pleading stage." *Id.* As in *Bot M8*, Defendants in this case demand too much.

Courts in this Circuit have similarly found that simply tracking the language of the patent claims does not automatically render a complaint deficient. *See, e.g.*, *Avago Techs. Gen. IP (Singapore) PTE Ltd. v. Asustek Computer, Inc.*, No. 15-CV-04525-EMC, 2016 WL 1623920, at *4 (N.D. Cal. Apr. 25, 2016) ("Nothing about *Twombly* and *Iqbal* suggests that a patent infringement complaint that largely tracks the language of the claims to allege infringement is insufficient per se."); *SATA GmbH & Co. KG v. Qingdao Hanspray New Material Tech. Co.*, 696 F. Supp. 3d 954, 959 (D. Nev. 2023) (same); *Sleep No. Corp. v. Sizewise Rentals, LLC*, No. ED CV 18-00356-AB (SPx), 2018 WL 5263065, at *4 (C.D. Cal. June 26, 2018) ("merely parrot[ing] the claim language … does not necessarily render the pleading deficient"); *IPCOMM, LLC v. Grp. Rossignol USA, Inc.*, No. 20-CV-272-BAS-RBB, 2020 WL 4201669, at *4 (S.D. Cal. July 22, 2020) (same). IPValue's complaint does not merely track the claim language in any event—it shows how those limitations are met in the accused products, which is sufficient to put Defendants on notice of what they must defend.

Courts have also declined to require detailed infringement theories in the complaint, like Defendants demand here, given that patent local rules or other discovery obligations separately require the plaintiffs to provide infringement contentions during the case. *See, e.g.*, *Avago*, 2016 WL 1623920, at *4 ("this District generally has not required detailed infringement theories until the time that infringement contentions are served"); *Neutrik AG v. ADJ Prods., LLC*, No. LA CV19-09937 JAK (AGRx), 2020 WL 6128066, at *2 (C.D. Cal. May 6, 2020) (denying motion to dismiss and noting that "as required by the Standing Patent Rules, Plaintiff must submit infringement contentions with claim charts detailing how each accused product allegedly satisfies the limitations of the asserted claims"). While this

Court has not adopted patent local rules, IPValue expects to provide more detailed infringement allegations in the course of discovery in this case, either in response to interrogatories seeking claim charts or in other disclosures that may be required in the Court's schedule. Defendants' demand for more detail is therefore premature.

Defendants' cited cases are distinguishable. In *North Star Innovations*, the complaint simply recited a patent claim and alleged that the "referenced product satisfies all of the recited limitations." *N. Star Innovations, Inc. v. Etron Tech. Am. Inc.*, No. CV 8:16–00599 SJO (FFMxx), 2016 WL 9046909, at *4 (C.D. Cal. Sept. 21, 2016). The complaint "lack[ed] a **single** factual allegation concerning the structure and operation" of the accused products." *Id.* (emphasis in original). And in *Chapterhouse*, the complaint provided only two screenshots to depicting the *entire* system for generating electronic receipts. *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018). In contrast, IPValue's complaint provides factual allegations for each limitation of the identified exemplary claim, and provides a supporting image for each limitation— not a mere screenshot for the entire claim. Accepting these allegations as true, and drawing all reasonable inferences in favor of IPValue, as the Court must do on a motion to dismiss, the FAC plausibly alleges that the accused products infringe the Polischuk patents.

### 2.    The FAC Plausibly Alleges Infringement of the '505 Patent

The allegations in the FAC, when read together, accepted as true, and construed in favor of IPValue, plausibly allege direct infringement of the '505 patent. The '505 patent is directed to a method, circuit, and system for determining a reference voltage. Dkt. 1-4 ('505 patent) at Abstract. The FAC identifies exemplary claim 1, which is a relatively straightforward claim that recites a "method of selecting a reference level from a set of possible reference levels, comprising: [1] using each of said possible reference levels to read a set of cells from a memory area; [2] determining a read error rate for each one of said possible reference levels associated

with the reading of said set of cells, and [3] selecting a reference level from said set of possible reference levels whose read error rate is relatively low."

The FAC alleges that around 2000, Toshiba and a Sandisk entity (later acquired by Western Digital) formed a joint venture to develop and manufacture flash memory chips, and that the accused products "contain flash memory and/or controller chips manufactured by the Toshiba/SanDisk Joint Venture." FAC ¶ 72. The FAC further explains that "at the International Solid-State Circuits Conference (ISSCC) 2018, authors affiliated with the Toshiba/SanDisk Joint Venture presented a paper titled 'A 512Gb 3b/Cell 3D flash memory on a 96-word-line-layer technology' (the 'ISSCC 2018 96L Paper,'" which, according to the excerpt provided, "describes a 512Gb 3b/cell 3D Flash memory in a 96-word-line layer BiCS FLASH technology." *Id.* ¶ 73.

The FAC further alleges that certain accused products "utilize 96L or 112L 3D NAND Flash memory" … "developed by the Toshiba/SanDisk Joint Venture and controllers developed by Western Digital in collaboration with the Toshiba/SanDisk Joint Venture," and links to an article entitled "Western Digital Announces WD Blue SN550 SSD," available at https://www.anandtech.com/show/15214/western-digital-announces-wd-blue-sn550-ssd. *Id.* ¶ 74. The FAC also provides an excerpt from this article which shows the product specifications, including that the NAND Flash is "Western Digital/SanDisk 96L 3D TLC." *Id.*

The FAC goes on to explain that "the ISSCC 2018 96L Paper describes techniques utilized in the operation of the 96L and/or 112L Accused Products." *Id.* ¶ 75. The FAC alleges that during meetings with Western Digital in August 2022, IPValue provided Western Digital with evidence of its infringement of the '505 patent, including the ISSCC 2018 96L Paper, and that "Western Digital never denied that the ISSCC 2018 96L Paper accurately described techniques utilized in its products." *Id.* The FAC then alleges that the accused products practice the claimed method of selecting a reference level from a set of possible reference levels, as that

method is described in the referenced excerpt of the ISSCC 2018 96L Paper.

For instance, using the set of possible reference levels to read a set of cells from a memory area, determining a read error rate, and selecting a reference level with a relatively low read error rate is evidenced by the language from the Paper stating that "the valley tracking read [5] minimizes the BER [bit error rate] by adaptively finding the optimal read voltage." *Id.* ¶¶ 76–78. The Paper further explains that the "read operation consists of two parts": a "$V_t$ tracking read" (VTR), where the selected level moves through different states and "the optimal read voltage is to be tracked for each state," and a "calibrating read," where the "optimal read voltage that is determined from the bit count result of the VTR is applied." *Id.*

The FAC then provides diagrams from the Paper *with annotations showing exactly where each method step corresponds*. *Id.*



Defendants' assertion that "nothing in the excerpt or images indicates that they correspond to or describe the inner workings of any Western Digital or Sandisk product" (Mot. at 15) improperly looks at the ISSCC Paper excerpts in isolation.

Defendants ignore the allegations expressly stating that the accused products utilize 96L or 112L 3D NAND Flash memory that was developed by the Toshiba/SanDisk Joint Venture and controllers developed by Western Digital. FAC ¶¶ 72–74. Contrary to Defendants' assertions, these allegations are not merely based on a hypothetical proposal. The FAC identifies a specific, real-world product marketed and sold by Western Digital that utilizes 96L 3D Nand Flash—the WD Blue SN550 SSD. *Id.* ¶ 74. Defendants simply ignore these allegations and evidence.

Defendants next take issue with the allegation that "the infringing products and services … include Defendants' SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, devices *and all versions and variations thereof since the issuance of the '505 Patent*." *Id.* ¶ 66 (emphasis added). According to Defendants, "[a] 'proposed' idea in a 2018 academic article cannot possibly show infringement since November 2005, which is when the '505 patent issued." Mot. at 15. This is nonsensical. The allegation in paragraph 66 simply defines what products are being accused, and of course that would only include products that issued after the patent. Nowhere does the FAC suggest that the ISSCC Paper is proof that Defendants have been infringing the '505 patent since November 2005.

The *Kolon Industries* case cited by Defendants is distinguishable, and actually supports that IPValue's claims are sufficient to withstand dismissal. In that case, the plaintiff cited to one of defendant's own patent applications as evidence that the defendant manufactures its product by performing the claimed twisting steps. *Kolon Indus.*, 2024 WL 3915072, at *3. The court found the pleading was "plausible" and "technically sufficient," as it is "not unreasonable to think that the Hyosung Defendants manufacture their HTC consistent with disclosures in the [their patent application], as Kolon pleads." *Id.* at *4. The problem, however, was that there were "inconsistencies in the pleadings" regarding identification of the products depicted in the complaint. *Id.* at *3–4. While the complaint identified the depicted product as

a picture of Hyosung's allegedly infringing product, elsewhere the complaint referenced other products. *Id.* at *4. Thus, it was "not clear" whether the depicted product was the infringing product or "some other product," and whether those other products also infringed. *Id.* There were also other "inconsistenc[ies]" in the complaint regarding whether the depicted product was in fact imported into the U.S. *Id.* at *5. The court found these inconsistencies rendered the complaint deficient and granted the plaintiff leave to amend. *Id.* Notably, the court made "clear" that plaintiff is *not required* "to disclose where it obtained the depicted product to cure these deficiencies." *Id.* The court also noted that the plaintiff could cure the complaint by, for example, simply "confirm[ing] that the accused product is used in tires bound for the United States." *Id.* The court did *not* find that additional detail or evidence was required.

Unlike *Kolon Industries*, Defendants do not identify any inconsistencies in the FAC regarding the accused products. And like the accused infringer's published patent application in *Kolon Industries*, the ISSCC Paper here plausibly supports that the accused products utilize the method set forth in claim 1 of the '505 patent. The court's holding in *Kolon Industries* directly refutes Defendants' assertion that a patent infringement complaint must provide citations to a "product manual, specification sheet, or any other form of technical product documentation." Mot. at 15. This information is usually confidential and exclusively in the possession of the accused infringers, which is why more detailed infringement contentions are generally not required until after this information is produced in discovery.

To the extent Defendants deny that the ISSCC Paper "describes techniques utilized in the operation of the 96L and/or 112L Accused Products" (Mot. at 16–17, citing FAC ¶ 75), this simply creates a disputed issue of fact that is inappropriate for resolution on a motion to dismiss. The Paper expressly states that it describes a 512Gb 3b/cell 3D Flash memory in a 96-word-line layer BiCS FLASH technology." FAC ¶ 73. Of course, it is not unreasonable to infer that the Paper

describes what it says it describes. Nor is it unreasonable to infer that Western Digital's products utilize this technology given that the Paper was co-authored by Sandisk, who at the time of the ISSCC Paper had been acquired by Western Digital. *See Pensmore Reinforcement Techs., LLC v. Cornerstone Mfg. & Distribution, Inc.*, 609 F. Supp. 3d 1092, 1104 (C.D. Cal. 2022) (even under Rule 9(b)'s heightened pleading standard, "on information and belief" allegations are sufficient "where the claims contain sufficient facts from which such a belief can reasonably be formed").

Defendants next take issue with the allegations regarding Western Digital's failure to deny that the ISSCC 96L Paper describes techniques utilized in its products during the various meetings with IPValue regarding IPValue's infringement allegations. FAC ¶ 75. Defendants argue that Western Digital's "failure to comment on the ISSCC paper cannot plausibly suggest that the article accurately describes any Western Digital or Sandisk product." Mot. at 17. But again, Defendants are improperly reading this allegation in isolation. The FAC expressly alleges that the accused products utilize 96L or 112L 3D NAND Flash memory, provides evidence showing that Western Digital markets and sells such products (FAC ¶ 74), and cites to excerpts from the ISSCC 96L Paper describing the techniques utilized in the operation of the 96L and/or 112L Accused Products. These allegations are sufficient by themselves. But the fact that Western Digital never denied that the ISSCC 96L Paper describes techniques utilized in its products, when it was in its best interest to do so, lends additional support to IPValue's infringement claims. Under the circumstances as alleged, it is entirely reasonable to infer that if Western Digital's products being accused of patent infringement did not actually function as described in the ISSCC 96L Paper, it would have said so. And while this may not be the only possible explanation for Western Digital's failure to deny, it is still a reasonable one. Certainly, it is evidence to support the reasonableness of IPValue's reliance upon the ISSCC Paper at the pleading stage. This allegation, *taken together with the other allegations in the FAC*, are more than sufficient to raise IPValue's right to relief

1    above the speculative level. That is all that is required at this time.

2        The *Helprin* case cited by Defendants is inapposite. In that case, the court

3    found that the defendant's silence was insufficient to support a claim for *breach of*

4    *contract based on fraudulent concealment* because there was no *contractual*

5    *obligation* to share the information at issue with the plaintiff. *Helprin v. Harcourt,*

6    *Inc.*, 277 F. Supp. 2d 327, 336–38 (S.D.N.Y. 2003). *Helprin* is clearly inapplicable

7    to this patent infringement case.

8        Finally, Defendants' assertion that "IPValue does nothing to connect the

9    article's quoted language with the claim language" (Mot. at 18) is simply not true.

10   As discussed above, the excerpted section explains that "the valley tracking read [5]

11   minimizes the BER [bit error rate] by adaptively finding the optimal read voltage,"

12   and that the "read operation" consists of (1) a "$V_t$ tracking read" (VTR), where the

13   selected level moves through different states and "the optimal read voltage is to be

14   tracked for each state," and (2) a "calibrating read," where the "optimal read voltage

15   that is determined from the bit count result of the VTR is applied." *Id.* ¶¶ 76–78. This

16   corresponds to the steps in claim 1 of the '505 patent (using the set of possible

17   reference levels to read a set of cells from a memory area, determining a read error

18   rate, and selecting a reference level with a relatively low read error rate). Moreover,

19   the annotated image clearly maps each method step to the system depicted in the

20   ISSCC Paper. This is sufficient to put Defendants on notice of the accused infringing

21   activity.

22   ### 3.    The FAC Plausibly Alleges Infringement of the '664 Patent

23       The allegations in the FAC plausibly allege direct infringement of the '664

24   patent, which is directed to a charge pump control circuit with four "main parts": a

25   clock control circuit; a clock switch and driver circuit; a pump stage; and a dynamic

26   load control circuit. Dkt. 1-5 ('664 patent) at Abstract. The FAC identifies exemplary

27   claim 1, which is a relatively straightforward claim that recites a "charge pump

28   control circuit, comprising: [1] a clock control circuit configured to output a switch

clock control signal based on a dynamic load; and [2] a clock driver circuit configured to switch a clock signal supplied to a charge pump circuit between one of a first clock signal and a second clock signal based on the switch clock control signal, wherein the first clock signal has a higher frequency than the second clock signal."

The FAC alleges that the accused SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, satisfy these limitations. FAC ¶¶ 82, 87. For the first limitation, the FAC provides annotated images from a "TechInsight Report Toshiba/Sandisk 96L 3D NAND Flash Circuit Analysis." FAC ¶ 88. The annotations highlight certain portions of the depicted charge pump control circuit and explains: "Control input B4093 came from one of the outputs of the comparator. It enables the changing of the current sink that discharges the capacitor. This makes the capacitor as a dynamic load." *Id.*

For the second limitation, the FAC provides additional annotated images from the "TechInsight Report Toshiba/Sandisk 96L 3D NAND Flash Circuit Analysis" depicting the clock driver circuit, and explains that the area labeled B4624 ("output") "goes to supply the clock to the charge pump." *Id.* ¶ 89. The annotations also label the first clock signal and second clock signal as CLK1 and CLK2, respectively. These images demonstrate that the claimed circuits are present in Western Digital's 96L 3D NAND flash memory, which, as discussed above, is used in at least the WD Blue SN550 SSD.

Defendants' arguments regarding this claim essentially amount to a request for detailed infringement contentions. But again, limitation-by-limitation analysis is not required at the pleading stage. *See Nalco*, 883 F.3d at 1350; *Bill of Lading*, 681 F.3d at 1335. The FAC contains sufficient factual allegations to put Defendants on notice of the accused infringing activity, which is all that is required in the complaint. IPValue will provide further detail regarding its infringement theories either in response to Defendants' interrogatories, or in other disclosures as required by the Court.

### B.  Because Plaintiffs Have Sufficiently Plead Direct Infringement, Defendants' Motion to Dismiss the Induced, Contributory, and Willful Infringement Claims Necessarily Fails

Defendants' arguments for induced, contributory, and willful infringement hinge entirely on their arguments regarding direct infringement, which fail for the reasons discussed above. Defendants' indirect infringement arguments necessarily fail too.

### C.  In the Event the Court Finds Any Claim Deficient, Plaintiffs Should Be Given Leave to Amend

"The court should freely give leave to amend when justice so requires." *Cortez v. AAA Life Ins. Co.*, No. 2:24-CV-04980-MCS-RAO, 2024 WL 5689109, at *1 (C.D. Cal. Aug. 21, 2024) (citing Fed. R. Civ. P. 15(a)(2)). "This policy is to be applied with extreme liberality." *Id.* (citing *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018)). "Courts may decline to grant leave to amend only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment, etc." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.*

None of the *Foman* factors are present here. It is relatively early in the case so Defendants will not be prejudiced by amendment. And while IPValue has amended its complaint once, that amendment was necessitated by the Sandisk spin-off transaction and was filed before Western Digital responded to the complaint. The purpose of the amendment was to add the newly independent Sandisk as a defendant, as well as to address issues that Western Digital had raised concerning the sufficiency of allegations regarding the '505 patent during a meet and confer call. As Defendants had not raised any issues of insufficiency regarding the other four asserted patents on that call, the amendment did not attempt to address any purported insufficiency as to

those patents. Defendants do not assert that further amendment would be futile.

Accordingly, if the Court finds that any of IPValue's claims are deficient, IPValue respectfully requests leave to amend. *See Kolon Indus.*, 2024 WL 3915072, at *3 (granting leave to amend the FAC to clarify allegations regarding the accused products).

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied.

Dated: June 9, 2025                 Respectfully submitted,

                                    /s/ *Brian Ledahl*
                                    Brian Ledahl (CA SBN 186579)
                                    bledahl@raklaw.com
                                    Neil A. Rubin (CA SBN 250761)
                                    nrubin@raklaw.com
                                    RUSS AUGUST & KABAT
                                    12424 Wilshire Blvd. 12th Floor
                                    Los Angeles, CA 90025
                                    Phone: (310) 826-7474

                                    ***Attorneys for Plaintiffs IPValue Management, Inc. and Longitude Flash Memory Solutions, LLC***

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,539 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 9, 2025                    */s/ Brian Ledahl*
                                       Brian Ledahl